[Crim. No. 11108.   Second Dist., Div. Two.   Aug. 25, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK J. HAMPTON et al., Defendants and Appellants.

Sherman Doctrow for Defendants and Appellants.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Michael T. Sauer, Deputy City Attorney, for Plaintiff and Respondent.

HERNDON, J.—This case comes to us by certification from the Appellate Department of the Los Angeles County Superior Court following its decision affirming a judgment of the Municipal Court of the Los Angeles Judicial District

which found appellants guilty on four counts of a complaint charging violations of section 212, subdivision (a) of the Labor Code. This section provides:

"No person, or agent or officer thereof, shall issue in payment of wages due, or to become due, or as an advance on wages to be earned: (a) Any order, check, draft, note, memorandum, or other acknowledgment of indebtedness, unless it is negotiable and payable in cash, on demand, without discount, at some established place of business in the State, the name and address of which must appear on the instrument, and at the time of its issuance and for a reasonable time thereafter, which must be at least 30 days, the maker or drawer has sufficient funds in, or credit, arrangement, or understanding with the drawee for its payment. . . . Where an instrument mentioned in subdivision (a) is protested or dishonored, the notice or memorandum of protest or dishonor is admissible as proof of presentation, nonpayment and protest and is presumptive evidence of knowledge of insufficiency of funds or credit with the drawee."

The order of certification states that the issue presented for our decision in this cause is the following:

"Whether in a criminal prosecution under Labor Code, Sec. 212(a) where a check in payment of wages is dishonored for insufficiency of funds, 'knowledge of insufficiency of funds or credit with the drawee' is a necessary element of the offense, which must be proved by the prosecution? Or is the lack of such knowledge only an affirmative defense? Or is this offense a welfare offense dispensing entirely with the normal criminal intent requirement?"

Appellants Hampton and Hammonds stipulated that on the relevant dates they were the president and secretary, respectively, of Industrial Fasteners, Incorporated; that on November 22, 1963, November 25, 1963, and December 3, 1963, they signed and issued four checks to the employees of Industrial Fasterners, Incorporated, in payment of wages; that these checks were presented for payment and were dishonored for the reason that there were not sufficient funds in the bank account upon which they were drawn and no arrangement for credit had been made with the bank.

Upon the court's acceptance of this stipulation, the prosecution rested. By way of defense, appellants testified that in October of 1963, the corporation had entered into an agreement with a group of private investors represented by a Mr. Gershony whereby this group would supply capital to the

corporation in consideration for certain stock and debenture arrangements which would give them control of the corporation. A copy of this quite terse and ambiguous document,[1]

1 "AGREEMENT

This agreement is between I F I Industries, Inc., a California Corporation located in Sun Valley, California formerly known as Industrial Fasteners, Inc., hereinafter referred to as I F I and the Gershony Group, a group of private investors represented by Josh Gershony, a management consultant located in Woodland Hills, California, hereinafter referred to as Gershony.

Whereas IFI is desirous of obtaining additional capital to its operators and whereas Gershony is desirous of providing the required capital, this agreement is drawn up as follows:

1. IFI will take immediate steps to obtain the approval of the California Corporation Commissioner to issue a debenture to Gershony of $100,000 at 7% interest due three years after date of issue and convertible at anytime prior to the due date to common stock at the current market price of 12½¢ per share for a total of 800,000 shares.

2. Upon approval of the Corporation Commissioner, Gershony will make cash available to IFI in a series of $10,000 notes which will come due on dates determined by a mutually agreeable cash flow schedule. This cash flow schedule will be based on certain shipment projections and variations up or down in such shipment projections will be reflected by up or down variations in the cash flow schedule.

3. Pending approval by the Corporation Commissioner, Gershony will advance cash to IFI on a secured basis by one or more of the following methods or by other methods to be determined later:

   A Advance cash to IFI for the net payroll and secure such cash by the endorsed payroll checks.

   B Advance cash to IFI by the purchase of certain pieces of equipment which will then be leased back to IFI for their use.

   C Advance cash to IFI by joint venture certain purchase orders received by IFI which require more than normal cash requirements.

4. The cash requirements estimated by IFI are $10,000 immediately and $40,000 within 30 days. The cash may be replaced by mutual agreement by satisfactory credit arrangement for IFI by Gershony.

5. IFI will attempt, on a best effort basis, to purchase a minimum of 30,000 shares of stock now held by the public for 15¢ a share total cost including brokerage fees through Dempsey-Tegeler or other authorized broker. This stock will be purchased in the name of Josh Gershony thru IFI and will be paid for by Gershony.

6. Gershony will attempt on a best effort basis to purchase 20,000 shares of stock now held in escrow by Kelly for an amount to be determined by Gershony.

7. Hampton, President of IFI will place the 50,000 shares of stock he holds in escrow in a voters trust to be voted by Gershony.

8. The present IFI board of directors will be replaced by a board consisting of Hampton and Hammonds of IFI, Gershony, and two others to be selected by Gershony.

9. In the event that this agreement is not approved or if it is modified by the Corporation Commissioner, Gershony has the option of voiding this agreement or of submitting a new proposal to be submitted to the Corporation Commissioner.

10. In the event that this agreement is voided for any reason, Gershony will remain in control of the Board of Directors and will have

initialed by appellants as president, vice president and secretary of the corporation, but unsigned by Gershony, was received into evidence.

On the subject of knowledge, each appellant was asked only this one question: "At the time these checks were signed by you, did you have any knowledge of the insufficiency of the bank account to cover them?" Each appellant answered in the negative denying any such knowledge. Neither of the appellants gave any testimony as to what efforts, if any, he had made to inform himself on the subject. Although appellant Hammonds testified that Mr. Gershony "was making the deposits at the time," no evidence was offered tending to prove that *any such deposits actually were made*, or if they were, *when they were made and the amounts thereof*. No evidence whatsoever was offered to show that appellants had ever discussed these payroll checks with Mr. Gershony or the bank or in any fashion had attempted to learn whether or not sufficient funds were in fact available to honor them upon presentation.

When approaching the task of interpreting any statute, it is well to have in mind certain fundamental rules of statutory construction. ■ "Statutes are to be so construed, if their language permits, as to render them valid and constitutional rather than invalid and unconstitutional. [Citations.] . . . ■ The proper construction to be given to this statute is to be found by construing it as a whole and harmonizing its various parts. [Citations.]" (*Erlich* v. *Municipal Court*, 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].)

■ "Moreover, the rule is established that when language which is reasonably susceptible of two constructions is

---

voting rights of Hampton stock until such time as all moneys due Gershony are repaid by IFI.

11. Any promotion stock authorized by the Corporation Commissioner will be issued to Gershony for his disposal. This is estimated at 19,000 shares of IFI.

12. In the event that the balance sheet year audit is materially changed from the represented balance sheet or if the performance of IFI does not follow the reflected sales or profit represented, Gershony has the option to discontinue supplying money and to terminate the agreement at Gershony's option.

The above has been reviewed and approved by the Board of Directors of I. F. I.

| FJH | |
|---|---|
| | President |
| DCH | |
| | V.Pres. & Secy" |

used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. ▪ The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute. [Citations.]'' (*In re Tartar*, 52 Cal.2d 250, 256-257 [339 P.2d 553].)

▪ ''Equally elementary is the uniformly recognized canon of statutory construction that effect must be given, if possible, to every word, clause and sentence of the statute defining the offense, and that no part or word can be ignored, discarded, treated as meaningless, or denied purpose and effect, unless there be irreconcilable contradiction and repugnance.'' (*People* v. *Burns*, 75 Cal.App. 84, 88 [241 P. 935].)

▪ In addition, we believe that the language and terms of section 212 of the Labor Code, particularly when considered in context with the other regulations enacted relating to the payment of wages (Lab. Code, ch. 1, pt. 1, div. 2), make clear that it was not the intent of the Legislature to impose an *absolute* criminal liability in this instance.

Initially, it may be noted that section 212 does not directly purport to deal with the problem of nonpayment of wages. Among others, sections 201, 202, 204 and 216 contain express provisions regulating the payment of wages and sections 203, 210, 215 and 216 provide that in appropriate instances wilful failure to comply with these regulations shall subject the employer to criminal prosecution, actions may be brought by the injured employee to collect up to 30 days penalty wages, and proceedings may be taken by the Division of Labor Law Enforcement to collect forfeitures to the state to be credited to the general fund.

In analyzing the predecessor statute to the present section 212, the court in *In re Ballestra*, 173 Cal. 657, 658-659 [161 P. 120], stated: ''In considering this statute we may presume, in support of the legislative enactment, that some employers in this state had adopted and followed the custom of paying the daily, weekly, or monthly wages of their employees, when due, by giving orders for the amount thereof payable only in goods, or orders of an indefinite nature not payable on demand, but at some future time. The purpose of the statute evidently is to prevent the evils which the legislature believed had arisen from such practices.

"The right to make contracts, like other personal and property rights, is subject to reasonable regulation designed and calculated to promote the general convenience, prosperity, and welfare. [Citation.] Laws having a reasonable tendency to accomplish these results, and not imposing unreasonable burdens upon individuals, are valid. The provisions of the statute in question do not transgress this rule. As applied to ordinary transactions between employers and employees, of the kind embraced within its terms, the statute is, in our opinion, valid and constitutional."

The various subsequent amendments and additions to the statute construed in *Ballestra* have not manifested any intent to change the basic legislative purpose underlying the section in its present form. The Legislature has indicated its intention to prescribe criminal punishments for complete failures to pay wages earned only when such failures are *wilful.* It would be anomalous, therefore, to hold that it intended to inflict such punishment upon one who in complete good faith, and without fault or neglect, has made payment by way of a check which, by reason of some subsequent and unforeseen event totally beyond his control, has been dishonored upon presentation. So to construe section 212, subdivision (a), especially in the application of the provision that the maker or drawer must have sufficient funds or credit with the drawee for 30 days after issuance, would indeed create doubts regarding its constitutionality.

On the basis of traditional standards, it would be difficult to justify a law which would operate to make criminally punishable human conduct which in no way has been infected with any wrongful intent or culpable negligence. Certainly a statute that would demand of an employer an attribute of superhuman prescience could not fairly be described as a law "not imposing unreasonable burdens upon individuals" as was the earlier version of section 212, subdivision (a) construed in *In re Ballestra, supra,* 173 Cal. 657, 659. In addition, it is to be noted that the affidavit upon which petitioner in *Ballestra* was held in custody charged that he " '*did willfully and unlawfully issue* in payment of and as evidence of indebtedness for wages due an employee . . . a certain note. . . . ' " (Italics added.)

That the Legislature had no such unreasonable design in mind is further illustrated by the enactment in 1963 of section 203.1 of the Labor Code. This section provides that employers in the building and construction industry shall be

liable to their employees for penalty wages in the event that they issue checks in payment of wages upon accounts in which there are insufficient funds to honor such checks upon presentation made within 30 days after receipt by the employees. It specifically provides, however, "that the said penalty shall not apply if the employer can establish to the satisfaction of the Labor Commissioner or an appropriate court of law *that the said violation of this section was unintentional.*" We regard it as most improbable that the Legislature intended employers in the building and construction industry to be spared the payment of penalty wages in instances of innocent and excusable error and at the same time intended that they, and all other employers, be absolutely liable to imprisonment for the selfsame acts.

A further indication that the Legislature did not intend section 212, subdivision (a) of the Labor Code to impose an absolute criminal liability, without regard to fault, is found in the following concluding sentence of the section: "Where an instrument mentioned in subdivision (a) is protested or dishonored, the notice or memorandum of protest or dishonor is admissible as proof of presentation, nonpayment and protest and *is presumptive evidence of knowledge of insufficiency of funds or credit with the drawee.*" (Italics added.)

Surely the Legislature would not have promulgated this quoted rule of evidence, which obviously is designed to facilitate the prosecution's proof of the maker's presumptive knowledge regarding the condition of his bank account, if it had not regarded the question of such knowledge as being at least a potentially triable issue in a prosecution under this particular penal statute. In other words, it seems quite evident that the Legislature did not regard the fact as to knowledge, or the lack of it, as irrelevant.

An essentially identical provision is contained in section 476a, subdivision (c) of the Penal Code relating to the general issuance of checks without sufficient funds. It is difficult to envision that the Legislature intended to promulgate a necessary and meaningful rule of evidence in one instance but had performed a meaningless and nugatory act in the other. Of course, it is equally apparent that section 212, subdivision (a) of the Labor Code is not a mere reiteration of section 476a of the Penal Code directed toward a limited class of persons. Not only does section 212, subdivision (a) apply to instruments, such as promissory notes payable on

demand, to which section 476a would not be applicable, but, more importantly, it does not require proof of *an intent to defraud,* one of the essential elements of section 476a. (*People* v. *Davis,* 176 Cal.App.2d 80, 84 [1 Cal.Rptr. 103] ; *People* v. *Reichenau,* 173 Cal.App.2d 584, 586 [343 P.2d 603].)

■ We conclude, therefore, that while section 212, subdivision (a) does not impose an absolute criminal liability which completely precludes all possible defenses after it has been established that the proscribed act has been committed, it does validly establish the quantum of proof sufficient to sustain a conviction unless and until it is overcome by proof that the conduct of the defendant was neither wilfully wrong nor culpably negligent. A somewhat analogous situation arises in the application of section 270 of the Penal Code which provides:

"Proof of abandonment or desertion of a child by such father, or the omission by such father to furnish necessary food, clothing, shelter or medical attendance or other remedial care for his child is prima facie evidence that such abandonment or desertion or omission to furnish necessary food, clothing, shelter or medical attendance or other remedial care is wilful and without lawful excuse." (Cf. *In re Bryant,* 94 Cal.App. 791, 794 [271 P. 926].)

■ To this extent, therefore, we agree with the determination made by the appellate department of the superior court in *People* v. *Turner,* 154 Cal.App.2d Supp. 883, 886 [316 P.2d 781], that no allegation of knowledge is required in a complaint charging a violation of section 212, subdivision (a) since proof of *actual* knowledge on the part of the accused or proof that he *actually* intended to violate the statute is not demanded by its terms. We would, however, modify the expression of the court in *Turner* relating to matters of defense, by inserting the indicated words in the following expression appearing therein on page 887 :

■ "Nor do we entertain any doubt that even though [actual] knowledge of insufficient funds in the hands of the 'drawee' is not required, the section is constitutional. It is to be noted that it does not purport to inflict punishment for failure to pay wages, but for undertaking to pay them by the issuance of some instrument. One who chooses to make use of an instrument instead of cash, may constitutionally be charged with first knowing [or using all reasonable efforts to acquire knowledge] that the instrument he issues conforms to the requirements of the code, and his [unjustifiable] ignor-

ance of the fact that if funds are needed, they are insufficient, is not made an excuse by the section nor required by any constitutional principle.''

We believe that such construction fairly conforms to the commendable intendment of the Legislature in enacting section 212, subdivision (a) without making every employer and his agent subject to imprisonment for misadventures resulting from events or circumstances beyond the ability of ordinary human agencies to foresee or to control. It leaves available to them the fundamental defense to criminal prosecutions set forth in Penal Code, section 26, subdivision Six:

''All persons are capable of committing crimes except . . . persons who committed the act or made the omission charged through *misfortune or by accident,* when it appears that there was no evil design, intention, *or culpable negligence.''* (Italics added.)

Once the prosecution has established the facts giving rise to the presumption expressed in section 212, subdivision (a), there will then devolve upon the defendant the burden of presenting evidence in justification and such burden will not be met by his merely testifying to *an actual lack of knowledge* of present insufficiency of funds, or probable future insufficiency within the prescribed 30-day period, without a further and adequate showing as to what steps he had taken to determine the amount of funds that were in fact available at the time the instrument was issued and which reasonably could be expected to remain available for payment of the instrument upon its presentation during the following 30 days.

To demand less of the defendant would be to read into the section a requirement that the prosecution introduce evidence at least sufficient to permit an inference of *actual* knowledge of insufficiency of the funds. Such proof ordinarily would also suffice to compel an inference that since the checks had been issued with knowledge of their insufficiency, they also had been issued with intent to defraud. In such cases a defendant could, and should, be convicted of violating Penal Code, section 476a, a felony, rather than Labor Code, section 212, subdivision (a), a misdemeanor.

Applying these tests to the instant case, it is clear that appellants' convictions must be sustained. After it was stipulated that the prosecution had presented the quantum of proof adequate to convict, absent a showing of justification

or lawful excuse, appellants testified only that they did not *actually* know the funds available to honor the several checks were insufficient. No evidence was offered as to the condition of the account prior to, at the time of, or following the issuance of the checks. No testimony was presented to show that appellants had even inquired or otherwise attempted to inform themselves of the condition of the account.

In fact, such little evidence as they presented tended to defeat the defense of justification or excusable mistake. The very agreement with the Gershony group offered into evidence by appellants made clear that the corporation of which they were officers and directors was in need of outside capital and that it was anticipated that third parties would ''advance cash to IFI for the net payroll.'' In the face of such actual knowledge of the financial condition of the corporation, appellants' failure to introduce evidence as to what monies, if any, had been advanced by these third parties, and as to what efforts, if any, appellants themselves had made to insure that sufficient funds were in fact available to honor the checks which they personally signed and issued, was tantamount to presenting no defense at all.

At the very least, one who has chosen to pay his employees by checks instead of cash, which are subsequently dishonored, should be prepared to present affirmative evidence that his ignorance of the true state of his bank account was justifiable rather than conscious, negligent or purposeful. He will be chargeable under section 212, subdivision (a) with knowledge of all that he reasonably should have known as well as that which he actually knew. To raise the issue of justification or excuse in a prosecution under this section, he must make some showing that the nonpayment of the checks was the result of circumstances neither foreseeable nor preventable by reasonably prudent investigation or action. No such showing was made in the present case.

The judgment is affirmed.

Fleming, J., concurred.

Roth, P. J., concurred in the judgment.

Appellants' petition for a hearing by the Supreme Court was denied October 20, 1965.