[Crim. No. 25710. Second Dist., Div. Two. Apr. 17, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWIN BEN KATZ, Defendant and Appellant.

COUNSEL

Stuart L. Baron for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, and Roy C. Preminger, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

BEACH, J.—After a trial by jury defendant Katz was convicted of receiving stolen property. He appeals from the judgment of conviction.

FACTS:

Appellant Katz was convicted of receiving property stolen from Aaron Piliavin. Testimony revealed that Mr. and Mrs. Piliavin closed their store at about 6 p.m. on Saturday, July 7. When they returned on Monday, July 9, much of their stock (mostly jewelry and oriental art objects) was missing. Someone had broken in from the adjacent shop and had emptied the safe and some of the shelves. Mr. Piliavin testified that the total cost to him of the missing objects had been $9,168.14; that the replacement cost would be $35,839.52; and that the retail value of the goods was $67,542.

The stolen goods were sold by appellant to Jerome Furman, who in turn sold them to various dealers. The basic question at trial was whether appellant *knew* the goods were stolen, for knowledge of the nature of the property is an element of the offense charged. (*People* v. *Vann,* 12 Cal.3d 220, 224 [115 Cal.Rptr. 352, 524 P.2d 824].) A related question is what standard to apply to determine whether he had knowledge.[1]

Jerome Furman, who was given immunity from prosecution, testified that he had seen appellant regarding the purchase of antique pocket watches. On July 11, 1973, appellant Katz asked if Furman was interested in a good deal; appellant took him to his office to see some oriental artifacts. The goods were packaged in cardboard boxes with newspaper wrapped around them; they were not openly displayed.

---

[1] See Penal Code, section 496, subdivisions 2 and 3.

Appellant told Furman he had just purchased them and needed money for a quick transaction. He did not say anything about selling it on commission. They went to Furman's bank and withdrew $4,000 in $100 bills and a cashier's check for $1,600. Furman loaded the goods and asked for a detailed bill of sale; appellant said he would furnish it later, but even after several phone calls and visits by Furman appellant failed to do so.

Officer William Wighton served a search warrant on appellant on September 28, 1973. At that time, appellant said he bought the lot from Dave Rumgin, a dealer he had seen at previous auctions. Rumgin, according to appellant, wanted $5,000 for the items, and appellant would take a $600 commission. In his statement to the police, he said he got the items on July 7 at about 2 p.m. (According to Mr. Piliavin, they were still in his shop at that time.) Appellant also told the police that he did not give Furman a receipt; at trial, however, he testified that he did give Furman a receipt. Neither appellant nor the police have been able to find a Dave Rumgin.

Freda Clark, who worked in appellant's auctions, testified she heard appellant tell Rumgin he would put the items on consignment and would try to sell them at the auction. She did not recall if appellant asked if Rumgin was a dealer.

Appellant testified in his own behalf. According to appellant, Rumgin came in between 12 and 2 p.m. on July 9 and asked if appellant was interested in buying his stock; Rumgin said he was a traveling antique dealer and was no longer going to do shows. Appellant offered $3,000 or $3,500 for the merchandise, but Rumgin wanted $5,000 so appellant said he would put it up for auction and put a reserve on it. Appellant did not suspect the goods were stolen; he thought Rumgin was a dealer and that the value was fair. He admitted telling Officer Wighton that he did not give Furman a receipt, but he later found the receipt (defendant's D) in the July 11 auction invoices. It would have been impossible to give Furman an itemized invoice; besides, he never demanded one.

Appellant testified that he does receive items from individuals for resale. About 8 to 10 percent of his business comes from private people for auction or to sell at retail.

CONTENTIONS ON APPEAL:

Appellant contends that the giving of CALJIC No. 14.66, based on Penal Code section 496, was prejudicial error in that:

(1) Penal Code section 496, subdivisions 2 and 3 is unconstitutional as a violation of defendant's right to remain silent and therefore is unconstitutional insofar as it authorizes CALJIC No. 14.66 as a comment on defendant's exercise of his right to remain silent;

(2) The giving of the instruction violates the principle that the state must prove each element of the crime beyond a reasonable doubt; and

(3) Penal Code section 496, subdivisions 2 and 3 is unconstitutional as a partial denial of the right to a jury trial.

DISCUSSION:

In his reply brief appellant has abandoned his initial contention that he was not a secondhand dealer and therefore was not within the ambit of section 496, subdivisions 2 and 3 of the Penal Code. We are left with questions regarding the constitutionality of the statute and the instruction based thereon.

Section 496 of the Penal Code makes it a crime for a person to buy or receive stolen property "knowing the property to be so stolen." Paragraph 2 of section 496 provides that: ". . . Every person whose principal business is dealing in or collecting used or secondhand merchandise or personal property, . . . who buys or receives any property which has been stolen . . . under such circumstances as should cause such person, . . . to make reasonable inquiry to ascertain that the person from whom such property was bought or received had the legal right to sell or deliver it, without making such reasonable inquiry, shall be presumed to have bought or received such property knowing it to have been so stolen or obtained. This presumption may, however, be rebutted by proof."

Paragraph 3 of section 496, in part pertinent here, reads: ". . . When . . . it shall appear from the evidence . . . that the defendant bought . . . property which had been stolen . . . and that the defendant bought, received, obtained, concealed or withheld such property under such circumstances as should have caused him to make reasonable inquiry to ascertain that the person from whom he bought, received, or obtained such property had the legal right to sell or deliver it to him, then the burden shall be upon the defendant to show that before so buying, receiving, or otherwise obtaining such property, he made such reasonable inquiry to ascertain that the person so selling or delivering the same to him had the legal right to so sell or deliver it."

In accordance therewith, the jury was instructed in terms of CALJIC No. 14.66:

"If the evidence establishes beyond a reasonable doubt that the defendant . . . (2) . . . bought or received property which had been stolen or obtained in any manner constituting theft, under such circumstances as should cause such person, agent, employee or representative to make reasonable inquiry to ascertain that the person from whom such property was bought or received had the legal right to so sell or deliver it and (3) that he did not make such reasonable inquiry, you should find that he bought or received such property knowing it to have been so stolen or obtained.

"The burden is on such a defendant to show that before so buying, receiving, or otherwise obtaining such property, he made a reasonable inquiry to ascertain that the person selling or delivering the property to him had the legal right to sell or deliver it. In the absence of any proof that such a defendant made such reasonable inquiry you must assume that he did not make such inquiry.

"However, if from all the evidence you have a reasonable doubt whether he knew the property was so stolen or obtained, you should find that he did not know it was so stolen or obtained."

Appellant objects to the presumption and burden of proof in the statute and the instruction.

1. *Penal Code section 496, subdivisions 2 and 3 does not unconstitutionally shift the burden of proof.*

The elements of the crime of receiving stolen property are "1) that the particular property was stolen, 2) that the accused received, concealed or withheld it from the owner thereof, and 3) that the accused knew the property was stolen. [Citations.]" (*People* v. *Vann, supra,* 12 Cal.3d at p. 224.) Appellant admits that the first two elements of the crime were proved; he apparently concedes also that substantial evidence would support a finding of knowledge. However, he contends that the jury might have found the element of knowledge not by weighing the evidence to see if the element were proven by the People beyond a reasonable doubt, but by applying the allegedly unconstitutional presumption in Penal Code section 496, subdivision 2 and CALJIC No. 14.66.

■ Appellant contends that the presumption forces him to prove his innocence rather than compelling the People to prove his guilt beyond a reasonable doubt. Actually, his burden is "to show that before so . . . receiving . . . such property, he made a reasonable inquiry to ascertain that the person selling or delivering the property to him had the legal right to sell or deliver it." In the absence of proof of such inquiry, the jury must assume he did not so inquire. The absence of inquiry by a secondhand dealer who received stolen property is sufficient under the instruction to require that the jury "should" find knowledge. However, the presumption operates only if the People have proved beyond a reasonable doubt (a) that the property was stolen, and (b) the existence of circumstances that should cause a reasonable person to make inquiry.

Presumptions in criminal cases have been upheld. In *United States* v. *Gainey,* 380 U.S. 63 [13 L.Ed.2d 658, 85 S.Ct. 754], for example, the Supreme Court held that from presence at an illegal still one can presume defendant was carrying on the business of a distiller or rectifier without having given bond as required by law.[2] In *Barnes* v. *United States,* 412 U.S. 837 [37 L.Ed.2d 380, 93 S.Ct. 2357], the court approved an instruction that "possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you *may* reasonably draw the inference . . . that the person in possession knew the property had been stolen." (Italics added.) Of course, saying that a jury "may reasonably draw [an] inference" is not the same as saying the jury "should" find knowledge, which is what was said in the instruction in the instant case.

The Supreme Court has used several tests to determine the constitutional validity of various presumptions. In *Leary* v. *United States,* 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532], where the court held that possession of marijuana is not sufficient to prove knowledge of its illegal importation, the court used a "more-likely-than not" test: a presumption is irrational or arbitrary and hence unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." (P. 36 [23 L.Ed.2d at p. 82].) Earlier cases applied the *Tot* standard (*Tot* v. *United States,* 319 U.S. 463, 467 [87 L.Ed. 1519, 1524, 63 S.Ct. 1241]): there must be a "rational connection between the facts proved and the ultimate fact presumed." The most restrictive test, explored ·but not

---

[2] In *United States* v. *Romano,* 382 U.S. 136 [15 L.Ed.2d 210, 86 S.Ct. 279], however, the court held that presence at an illegal still could not support an inference that defendant was in possession, custody or control of the still.

specifically adopted in *Barnes* v. *United States, supra,* 412 U.S. 837, is that of "reasonable doubt"; in *Barnes,* the court held that evidence (defendant's possession of recently stolen Treasury checks payable to persons he did not know) was "clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen."

The present case differs from *Barnes* in that seemingly the statute and instruction here require that the inference of knowledge be made and knowledge thus presumed, rather than merely permitted or authorized. This seemingly has the effect of creating not a rule of evidence but of law—creating the crime—which can be summarized somewhat as: He who has possession of stolen property acquired under circumstances requiring inquiry, unless he can explain innocent acquisition, is guilty of receiving stolen property. Knowledge that the property was stolen, as a necessary element to be proven by the People, would seem to be effectively eliminated.

However, that is not the situation in the present case. Here irrespective of what the statute seems to compel its application was modified by the court's instruction in two significant respects. First, the instruction said that the jury "should" find knowledge, based on certain circumstances. "Should" is not as mandatory as "must." The jury has the power to acquit. But it was the duty of the court to advise the jury of what its duty "should" be. "[T]he jury should be instructed on the rules of law applicable, including those rules of law called presumptions. The fact that the jury may choose to disregard the applicable rules of law should not affect the nature of the instructions given." (Assem. Committee comment to Evid. Code, § 604; *People* v. *Lem You,* 97 Cal. 224 [32 P. 11]; *People* v. *Macken,* 32 Cal.App.2d 31 [89 P.2d 173].)

Secondly, the presumption is rebuttable and the jury was again properly reminded by the last sentence of the instruction that if there be any reasonable doubt of defendant's knowledge, they should find that he did not know of the stolen nature of the property. This was in accord with the provisions of Evidence Code section 607.[3]

There are several other statutory presumptions applicable in criminal cases in California. For example, Penal Code section 250 (presumption

---

[3]Section 607 reads: "When a presumption affecting the burden of proof operates in a criminal action to establish presumptively any fact that is essential to the defendant's guilt, the presumption operates only if the facts that give rise to the presumption have been found or otherwise established beyond a reasonable doubt and, in such case, the defendant need only raise a reasonable doubt as to the existence of the presumed fact."

of malice), Penal Code section 270e (presumption of willfulness of abandonment), Penal Code section 476a, subdivision (c) (presumption of knowledge of insufficiency of funds), Penal Code section 484, subdivision (b) (presumption of intent to defraud), Penal Code section 12091 (presumption of removal of serial number from gun by possession thereof), Vehicle Code section 10855 (presumption of embezzlement of vehicle), and Vehicle Code section 23126 (presumption of driving under the influence).

Although we have not found a case involving this particular statute, the question of the constitutionality of presumptions is not new, nor is the particular issue unfamiliar to this court, even where the operation of the presumption is to establish by inference the existence of an "element" of the crime.

In *People* v. *Lachman,* 23 Cal.App.3d 1094 [100 Cal.Rptr. 710], this court held that the presumption described in Vehicle Code section 23126 is neither unfair nor unconstitutional. It was there explained that such presumption merely allows proof of an ultimate fact to be presumed from proof of a preliminary fact. (*People* v. *Lachman, supra,* at p. 1097.) This court has also previously held and explained that a statutory presumption imparting knowledge to a defendant in a criminal case is likewise not unconstitutional. (*People* v. *Hampton,* 236 Cal.App.2d 795 [46 Cal.Rptr. 338].)

It is not our function here to decide whether to accomplish its objective,[4] better language could have been employed in the statute. Our concern is whether the statute as applied to this defendant offended constitutional standards and thereby denied the defendant due process of law. We do not find the statute unconstitutional. The operation of the presumption of knowledge is conditional upon the existence of facts which the prosecution must prove beyond a reasonable doubt. The presumption does not eliminate that burden of the People, nor does it in any way preclude the application of the rule that even if the People establish the entire case (prima facie) beyond a reasonable doubt, any affirmative defense by the defendant need create only a reasonable doubt and need not be established by a preponderance of evidence. Although the latter rule was not explained by the trial court in such comparative terms as we have here used, the trial court nonetheless ended the particular instruction of which appellant complained, with a

---

[4]We assume the objective of the Legislature was to avoid the studied and intentional ignorance of the stolen nature of property by those most able to determine whether or not it has been stolen (for example, dealers in second-hand goods).

clear expression of the reasonable doubt standard as to the entire case. Such statement clearly embraced the reasonable doubt standard as to any affirmative defense provided for by the statute. The jury was correctly instructed.

*2. Penal Code section 496 is not improper as a violation of a defendant's right to remain silent and not to incriminate himself.*

This argument has been answered in *Barnes* v. *United States,* 412 U.S. 837, at pages 846-847 [37 L.Ed.2d 380, at pages 387-388]; *Turner* v. *United States,* 396 U.S. 398, 417-418 [24 L.Ed.2d 610, 624, 90 S.Ct. 642]; and *Yee Hem* v. *U.S.,* 268 U.S. 178, 185 [69 L.Ed. 904, 906-907, 45 S.Ct. 470]. We see no need for further discussion.

*3. Penal Code section 496 does not deny equal protection to secondhand dealers.*

■ Except where a "fundamental right" or a "suspect classification" is involved, a compelling state interest is not necessary in order to accord different treatment to different groups. Rather, the equal protection clause requires only that the categorization not be irrational, arbitrary, or capricious. It is not irrational to require secondhand dealers, who do handle goods that can be easily "fenced," to make inquiry of the title and origin of the goods if the circumstances of receipt are suspicious. From a policy standpoint, secondhand dealers are certainly in a much better position to make such inquiry than are most other groups. There is a rational basis for the distinction, so appellant's equal protection argument must fail.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.