[No. B040209. Second Dist., Div. Five. Apr. 25, 1990.]

JOSEPH WANG, Plaintiff and Respondent, v.
DIVISION OF LABOR STANDARDS ENFORCEMENT, Defendant
and Appellant.

COUNSEL

H. Thomas Cadell, Jr., for Defendant and Appellant.

Bernard S. Kamine, Phyllis M. Ungerer and Kamine, Steiner & Ungerer for Plaintiff and Respondent.

OPINION

ASHBY, Acting P. J.—Appellant, Division of Labor Standards Enforcement (hereinafter DLSE), a division of the Department of Industrial

Relations of the State of California, imposed a civil penalty of $9,700 on respondent Joseph Wang, a licensed general contractor doing business as Milestone Construction Company (hereinafter respondent). This sanction was assessed under Labor Code section 1021.5, which penalizes a licensed general contractor who willingly and knowingly enters into a contract with a subcontractor who does not hold a valid state contractor's license.[1]

After the penalty was upheld in an administrative hearing, respondent petitioned the superior court for a writ of mandate. Respondent contended there was no evidence that at the time of entering the subcontract respondent knew the subcontractor was unlicensed. Respondent challenged as unlawful an interpretation by DLSE that the statute does not require such knowledge.

The trial court granted the writ of mandate, commanding DLSE to vacate its $9,700 penalty assessment against respondent and to discontinue use of DLSE's Interpretive Bulletin No. 85-2-Amended, on the ground the bulletin erroneously interpreted the meaning of "willingly and knowingly" in Labor Code section 1021.5. The trial court also awarded respondent $7,500 attorney's fees. DLSE appeals.

We affirm the trial court's judgment. We hold an award of civil penalties under Labor Code section 1021.5 requires proof that at the time of entering the subcontract the general contractor knew the subcontractor was unlicensed; here DLSE presented no such proof. We also uphold the trial court's award of attorney's fees pursuant to Code of Civil Procedure section 1028.5.

## PROCEDURAL AND FACTUAL BACKGROUND

Respondent contracted with the Los Angeles Unified School District for a certain project. On July 17, 1987, respondent entered into a subcontract with Bob LaMammra Plastering (hereinafter Plastering Subcontractor) for the lath and plaster work.

A DLSE inspector visited the jobsite and found unlicensed persons doing the plastering work. Upon calling the Contractors' State License Board and

---

[1] Labor Code section 1021.5 provides: "Any person who holds a valid state contractor's license issued pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and who willingly and knowingly enters into a contract with any person to perform services for which such a license is required as an independent contractor, and that person does not meet the burden of proof of independent contractor status pursuant to Section 2750.5 or hold a valid state contractor's license, shall be subject to a civil penalty in the amount of one hundred dollars ($100) per person so contracted with for each day of the contract. The civil penalties provided for by this section are in addition to any other penalty provided by law."

determining that Plastering Subcontractor was unlicensed, the inspector issued a citation to respondent for $9,700, which was calculated at $100 per day for 97 working days of the contract. (Lab. Code, §§ 1021.5, 1022.)

Respondent demanded a hearing. (Lab. Code, § 1023.) At the hearing, DLSE presented no evidence that respondent knew Plastering Subcontractor was unlicensed. Respondent presented evidence to show that respondent believed Plastering Subcontractor was licensed. Respondent's project manager, Eric Lin, testified that when he entered the subcontract on behalf of respondent, he had no knowledge or information that Plastering Subcontractor was unlicensed. Mr. Lin had used Plastering Subcontractor on a previous job, about three years earlier, and the work had been satisfactory. Plastering Subcontractor's business address was the same as three years earlier.

When Mr. Lin mailed the formal subcontract to Plastering Subcontractor, Bob LaMammra signed it and filled in a number in the space below the signature line for "Contractor's State License No." Because of his prior good experience with Plastering Subcontractor, Mr. Lin relied upon this representation of Plastering Subcontractor's license status. Mr. Lin did not contact the Contractors' State License Board to verify the license. The first he heard of any problem about Plastering Subcontractor's license was just before the citation issued. DLSE's inspector had issued the citation after contacting the Contractors' State License Board and determining that the license number on the subcontract belonged to another company and that Plastering Subcontractor did not hold a valid license.

At the hearing DLSE admitted that Plastering Subcontractor probably "purported himself to be licensed when indeed he wasn't." DLSE contended, however, that DLSE need not prove respondent knew Plastering Subcontractor was unlicensed. DLSE argued that in order to avoid the sanctions of Labor Code section 1021.5, respondent had a duty to contact the Contractors' State License Board to verify the license number. "[O]ur contention is that you have to check. . . . It's just good business [sense] that only takes a phone call to the contractor's board to verify what the actual situation is."

DLSE relied upon its August 20, 1985 Interpretive Bulletin No. 85-2-Amended. In the bulletin the Labor Commissioner interpreted "willingly and knowingly" in Labor Code section 1021.5 to mean that "the contractor knew or should have known that the subcontractor was unlicensed. [¶] Under the section, the contractor is required to know or should be held to the duty to make a reasonable effort to ascertain whether any subcontractor

with whom he/she contracts is required to be licensed and whether the subcontractor is or is not licensed."[2]

The administrative hearing officer relied upon this interpretation in upholding the $9,700 penalty. The hearing officer ruled that under the interpretive bulletin, "willingly and knowingly" means "the contractor either knows or is remiss in not finding out. Since [respondent] assumed that [Plastering Subcontractor] was licensed and did not exert any effort in making a readily available verification of the same, it is concluded that he is remiss in not finding out."

The superior court ruled that the bulletin's interpretation was contrary to the clear and unambiguous language of Labor Code section 1021.5. The court further held that, since the hearing officer did not find respondent knew Plastering Subcontractor was unlicensed, the penalty must be set aside.

### LABOR CODE SECTION 1021.5

The evidence at the administrative hearing failed to show respondent knew Plastering Subcontractor lacked a valid license. DLSE did not contend, nor did the hearing officer find, that respondent had such knowledge. █ DLSE contended, and the hearing officer found, that violation of Labor Code section 1021.5 was shown by the mere fact that respondent failed to call the Contractors' State License Board to verify the license number Plastering Subcontractor gave to respondent.

We hold this finding insufficient to establish a violation of Labor Code section 1021.5, and DLSE's interpretation to the contrary is erroneous.

Labor Code section 1021.5 provides in pertinent part, "Any person who holds a valid state contractor's license . . . , and who *willingly and knowingly* enters into a contract with any person to perform services for which

---

[2] The bulletin states, "It is the Labor Commissioner's interpretation of the meaning of that statute that 'willingly and knowingly,' as used in the statute, means that the contractor has, of his/her own volition, entered into a contract with a subcontractor to do work or perform services for which a state contractor's license is required, and that, at the time the contract was entered into, the contractor knew or should have known that the subcontractor was unlicensed.

"Under the section, the contractor is required to know or should be held to the duty to make a reasonable effort to ascertain whether any subcontractor with whom he/she contracts is required to be licensed and whether the subcontractor is or is not licensed.

"In those cases where the contractor has taken reasonable steps to ascertain the licensure status of the subcontractor and has been either misled or furnished incorrect information, there may be a basis for modification of the penalty assessment, but only after hearing and by appropriate findings, in accordance with previous directives."

such a license is required as an independent contractor, and that person does not meet the burden of proof of independent contractor status pursuant to Section 2750.5 or hold a valid state contractor's license, shall be subject to a civil penalty . . . ." (Italics added.)

The statute expressly requires the licensed contractor to act "willingly and knowingly." "Knowingly" is defined in Penal Code section 7, subdivision 5 to import "a knowledge that the facts exist which bring the act or omission within the provisions" of a statute. In *Brown* v. *State Department of Health* (1978) 86 Cal.App.3d 548, 554 [150 Cal.Rptr. 344], the court used the Penal Code definition to construe the word "knowingly" in a statute defining unprofessional conduct for purposes of license discipline proceedings.

One of the necessary facts under Labor Code section 1021.5 is that the subcontractor be unlicensed. The requirement that the licensed contractor act "knowingly" imports knowledge that such fact exists.[3]

DLSE misplaces reliance on an analogy to Business and Professions Code section 7118. That section provides that a licensed contractor is subject to discipline by the Contractors' State License Board for entering into a contract with an unlicensed contractor. When originally enacted in 1939, Business and Professions Code section 7118 referred to *"knowingly* entering into a contract" (Stats. 1939 ch. 37, § 1, p. 394, italics added). The word "knowingly" was deleted from section 7118 in 1975. (Stats. 1975, ch. 329, § 3, p. 775.) DLSE asks rhetorically why actual knowledge should be required for Labor Code section 1021.5 when it is not required for Business and Professions Code section 7118. The simple answer is that the Legislature has said so, by deleting "knowingly" from Business and Professions Code section 7118 but enacting "knowingly" in Labor Code section 1021.5. Moreover, a rationale for the distinction is readily apparent because the two sections serve different purposes. Labor Code section 1021.5 provides very heavy penalties of $100 per day per person for each day of the contract, and the Legislature could reasonably apply a higher standard to such penalties than to license disciplinary proceedings.

In arguing that a contractor must be held to a duty to make reasonable efforts to ascertain the license status of the subcontractor, DLSE confuses statutory interpretation with evidentiary facts. A contractor's failure to make reasonable efforts, like other evidence, may be used to warrant an

---

[3]DLSE also makes a grammatical argument that "knowingly" refers only to whether the general contractor knows that the contract is the type for which a license is required. This argument is unpersuasive, for it not only rewrites and reorganizes the statute, it also contradicts DLSE's own interpretive bulletin.

inference by the trier of fact that a contractor knew of the unlicensed status of the subcontractor. For example, in *Davis* v. *Morris* (1940) 37 Cal.App.2d 269, 274 [99 P.2d 345], the court upheld a civil penalty against an employer under Labor Code section 203 for willful failure to pay wages of an employee. The employer argued the failure was not willful because the employer believed in good faith the employee was a partner rather than an employee. The trial court found as a fact that the employer had no reasonable basis, and was not acting in good faith, in claiming the employee was a partner. (*Ibid.*; *Barnhill* v. *Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 8 [177 Cal.Rptr. 803].) Similarly, under Labor Code section 1021.5, the trier of fact may infer knowledge from suspicious circumstances, but this is an evidentiary question; the hearing officer in this case did not purport to find that respondent knew Plastering Subcontractor was unlicensed or that respondent was not in good faith in believing Plastering Subcontractor was properly licensed.

We are unpersuaded by DLSE's argument that the statute would be "impossible to enforce" if DLSE must prove knowledge. The statute as presently worded requires such knowledge. If that is too high a burden for a system of prompt and effective civil sanctions (Lab. Code, § 1020), the statute could be amended to delete the knowledge requirement or to add an appropriate evidentiary presumption which would assist enforcement.[4]

### ATTORNEY'S FEES

The trial court awarded respondent $7,500 attorney's fees. This was the amount respondent requested (the statutory maximum) under either Code of Civil Procedure section 1028.5 or Government Code section 800, which were cited by respondent in the alternative. Government Code section 800 allows such attorney's fees in a civil action reviewing an administrative proceeding, where it is shown that the determination in the administrative proceeding was the result of arbitrary or capricious action by a public entity. Code of Civil Procedure section 1028.5 allows an award of reasonable litigation expenses including attorney's fees in a civil action between a small business or licensee and a state regulatory agency, where the action of the agency was undertaken without substantial justification. Where Code of Civil Procedure section 1028.5 applies, Government Code section 800 does

---

[4] For example, Labor Code section 212 penalizes an employer who pays wages with a check drawn upon insufficient funds. The last paragraph of section 212 specifically provides, "Where an instrument mentioned in subdivision (a) is protested or dishonored, the notice or memorandum of protest or dishonor is admissible as proof of presentation, nonpayment and protest and *is presumptive evidence of knowledge of insufficiency of funds or credit with the drawee.*" (Italics added.) (*People* v. *Hampton* (1965) 236 Cal.App.2d 795, 805-806 [46 Cal.Rptr. 338].)

not apply. (Code Civ. Proc., § 1028.5, subd. (g).) Although both sections now have the same maximum of $7,500, Code of Civil Procedure section 1028.5 was originally enacted to allow the $7,500 award to small businesses and licensees when the limit under Government Code section 800 was only $1,500.[5]

■ We conclude the trial court's award may be upheld under Code of Civil Procedure section 1028.5.[6] DLSE's sole argument against application of this statute is meritless.

Code of Civil Procedure section 1028.5 provides in pertinent part, "(a) In any civil action between a small business or a licensee *and a state regulatory agency, involving the regulatory functions of a state agency as applied to a small business or a licensee,* if the small business or licensee prevails, and if the court determines that the action of the agency was undertaken without substantial justification, the small business or licensee may, in the discretion of the court, be awarded reasonable litigation expenses in addition to other costs. . . ." (Italics added.)

DLSE's sole contention is that DLSE is not a "regulatory agency" exercising a "regulatory function" as to respondent within the meaning of this statute. DLSE contends that in assessing a civil penalty under Labor Code section 1021.5, DLSE acts as an "enforcement" agency, a function DLSE claims is not "regulatory." DLSE contends that because the DLSE does not, in the words of its brief, "promulgate . . . rules or regulations regulating the business activities" of licensed contractors, DLSE does not exercise a regulatory function as to respondent.

DLSE cites no authority that the Legislature intended such a narrow construction of "regulatory" in Code of Civil Procedure section 1028.5. We find to the contrary that in assessing the civil penalties authorized by Labor Code section 1021.5, DLSE exercised a regulatory function within the meaning of Code of Civil Procedure section 1028.5.

The purpose of the sanctions in Labor Code section 1021.3 is "to establish a citation system for the imposition of prompt and effective civil sanctions against violators of the laws and regulations of this state relating to . . . the utilization of unlicensed contractors and other persons who are not valid independent contractors by licensed contractors." (Lab. Code, § 1020.) The Legislature apparently gave this responsibility to DLSE

---

[5] Statutes 1981 chapter 814, section 1, page 3159. Code of Civil Procedure section 1028.5 is named the Carpenter-Katz Small Business Equal Access to Justice Act. (Code Civ. Proc., § 1028.5, subd. (i).)

[6] There is no dispute respondent is a small business as statutorily defined.

because DLSE has an extensive field operation to enforce other minimum labor standards. The field enforcement unit "shall have primary responsibility for administering and enforcing those statutes and regulations most effectively enforced through field investigations, including Sections . . . 1021.5, . . ." in accordance with a plan the Labor Commissioner is required to adopt. (Lab. Code, § 90.5, subds. (b), (c).)

In *Craib* v. *Bulmash* (1989) 49 Cal.3d 475, 478-479 [261 Cal.Rptr. 686, 777 P.2d 1120], the Supreme Court discussed the enforcement powers of DLSE, including subpena powers and civil penalties, regarding substantive wage and hour provisions of the Labor Code. Although divided over the potential application of an employer's privilege against self-incrimination, the Supreme Court unanimously considered DLSE's functions in this regard to be regulatory in nature. (*Id.*, at pp. 489-490, 494, 496-497.)

Moreover, if the Labor Commissioner finds a willful or deliberate violation of the Labor Code provisions has been committed by a licensed contractor, the violation must be reported to the Contractors' State License Board. (Lab. Code, § 98.9.)[7] DLSE thus assists the regulatory function of the Contractors' State License Board. Although DLSE's function is not identical with the Contractors' State License Board's, we find it is regulatory within the meaning of Code of Civil Procedure section 1028.5.

We therefore conclude the trial court properly awarded respondent $7,500 attorney's fees pursuant to Code of Civil Procedure section 1028.5. Since respondent has already been awarded the statutory maximum, it is not possible to award additional attorney's fees for this appeal. (*Reeves* v. *City of Burbank* (1979) 94 Cal.App.3d 770, 780 [156 Cal.Rptr. 667].)

■   Respondent suggests additional attorney's fees could be awarded on a "public interest" basis under Code of Civil Procedure section 1021.5. We conclude such an award would be inappropriate because respondent's private financial interest in this litigation is significant and any benefit to the public is incidental.[8]

---

[7] Labor Code section 98.9 provides, "Upon a finding by the Labor Commissioner that a willful or deliberate violation of any of the provisions of the Labor Code, within the jurisdiction of the Labor Commissioner, has been committed by a person licensed as a contractor pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, in the course of such licensed activity, the Labor Commissioner shall immediately, upon expiration of the period for review specified in Section 98.2, or other applicable section, deliver a certified copy of the finding of the violation to the registrar of the Contractors' State License Board."

[8] Code of Civil Procedure section 1021.5 provides, "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a

"The private attorney general theory recognizes citizens frequently have common interests of significant societal importance, but which do not involve any individual's financial interests to the extent necessary to encourage private litigation to enforce the right. [Citation.] To encourage such suits, attorneys fees are awarded when a significant public benefit is conferred through litigation pursued by one whose personal stake is insufficient to otherwise encourage the action. [Citation.] Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." (*Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 114 [212 Cal.Rptr. 485]; *Austin* v. *Board of Retirement* (1989) 209 Cal.App.3d 1528, 1535 [258 Cal.Rptr. 106].)

Here respondent had a large personal financial stake in this litigation. Respondent fought to vacate a $9,700 civil sanction assessed by DLSE. If respondent did not succeed in vacating that penalty, respondent could also conceivably face disciplinary action against his license by the Contractors' State License Board. (Lab. Code, § 98.9; Bus. & Prof. Code, § 7118.) Respondent contends that by attacking DLSE's Interpretive Bulletin No. 85-2-Amended, respondent conferred a benefit upon a large class of persons, namely licensed contractors. This alleged benefit is incidental to respondent's personal benefit. Respondent attacked the interpretive bulletin because DLSE relied upon it in the administrative hearing. An award of public interest attorney's fees is not needed to encourage respondent to raise that issue. Respondent also has sufficient personal incentive to defend his trial court victory on this appeal.

The judgment is affirmed.

Boren, J., and Turner, J., concurred.

---

significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, *(b) the necessity and financial burden of private enforcement are such as to make the award appropriate,* and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ." (Italics added.)