Filed 5/6/13  Marino v. Pro Sports & Entertainment CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LLOYD MARINO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PRO SPORTS & ENTERTAINMENT, INC., et al.,<br><br>    Defendants and Respondents. | B233940<br><br>(Los Angeles County<br>Super. Ct. No. BC348109) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Henry J. Josefsberg for Plaintiff and Appellant Lloyd Marino.

TroyGould, Christopher A. Lilly and Amy Fitzhenry, for Defendants and Respondents Pro Sports & Entertainment, Inc., Paul H. Feller and Stratus Media Group.

_____

Lloyd Marino appeals from the judgment entered following a jury trial on his claims for unpaid wages and breach of employment contract against his former employer, Pro Sports & Entertainment, Inc. (Pro Sports); its president, Paul H. Feller; and Stratus Media Group, the parent of Pro Sports. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Marino, the chief technology officer of another company, met Feller in July 2005. After several discussions Feller offered Marino the position of chief technology officer and vice president of business development at Pro Sports, a promoter of sports and live entertainment events. Marino's responsibilities would include technological strategic planning, advising a rewards program for a credit card sponsored by Pro Sports and financial management of some operational functions, including reporting, budgeting and marketing for the credit card program. Marino accepted the position.

A written employment agreement dated August 26, 2005 provided Marino's base salary was $150,000. Marino could be terminated for "good cause" and could also resign for "good reason," defined to include "knowingly unlawful events uncured in a timely manner." If Marino resigned for "good reason," he was entitled to recover from Pro Sports the "unpaid portion of the Base Salaries, computed on a pro rata basis through March 15, 2008."

Marino began working for Pro Sports on September 1, 2005. His first paycheck, dated September 15, 2005, was drawn on one of Pro Sports' accounts at U.S. Bank, which promptly honored the check. Marino's second paycheck, drawn on the same account on October 3, 2005, was initially rejected by U.S. Bank, a fact that did not surprise Marino because several of Pro Sports' vendors had complained to him they had not been paid for their services. The check cleared on October 6, 2005.

The following week Marino left on a business trip for New York. He had pre-paid his own expenses and requested reimbursement from Feller. He also asked for his mid-month paycheck, which Feller told him had been sent to him via United Parcel Service. Marino received the check, dated October 15, 2005, on October 21, 2005 and deposited it. It was rejected. Feller gave Marino conflicting reasons for the funds shortage and

2

instructed Marino to redeposit the check the following Monday. Marino presented the check to U.S. Bank on October 24, 2005; but, again, it did not clear.

Marino resigned on October 26, 2005 because his paycheck had not cleared. He gave notice to Feller he had resigned for "good reason" and was invoking his rights under the employment agreement. Feller described Marino's claim as ludicrous but accepted his resignation. Feller denied any knowledge Pro Sports' checks had been dishonored for insufficient funds. Initially blaming the bank for applying funds incorrectly, he subsequently claimed Pro Sports had been the victim of fraud that had depleted the accounts. Marino was unable to cash the October 15, 2005 check until November 7, 2005. He never received any payment for his work between October 16 and October 26, 2005.

On February 27, 2006 Marino sued Pro Sports and Feller, alleging causes of action for breach of contract, wages owed, conversion and unfair business practices.[1] Marino initially obtained a default judgment, which was set aside on March 12, 2008. (See *Marino v. Pro Sports et al.* (June 23, 2009, B208065) [nonpub. opn.] [affirming trial court order setting aside default judgment].)

The case was tried to a jury. On July 28, 2010 the jury returned a unanimous verdict in favor of all defendants on the breach of contract and conversion claims. However, the jury found in favor of Marino on his cause of action for wages owed and awarded him $3,202.34, plus $17,307.60 in waiting time penalties. The court denied Marino's motions for a new trial and for judgment notwithstanding the verdict but awarded him $1,594.12 in interest on the wages owed. No interest was awarded on waiting time penalties.

Pro Sports, Feller and Stratus Media moved for an award of attorney fees. The court awarded Feller and Stratus Media $167,104.87 in fees, 50 percent of the total requested. Marino also moved for an award of attorney fees, seeking $151,400, plus

---

[1]     Stratus Media, which became the parent of Pro Sports as of March 14, 2008, was added as a defendant on September 22, 2009.

another $18,901.72 in interest and penalties. The court awarded Marino $15,140 against Pro Sports.

## CONTENTIONS

Marino contends the trial court committed instructional error that negated provisions of the Labor Code based on its erroneous admission of extrinsic evidence to interpret portions of the employment agreement; improperly instructed the jury on a good faith defense; abused its discretion by failing to order production of documents related to Feller's knowledge the U.S. Bank accounts were overdrawn and to alter ego allegations against Feller and Pro Sports; erred in allowing certain hearsay evidence; erred by disallowing prejudgment interest on waiting time penalties; and abused its discretion in awarding attorney fees.

## DISCUSSION

1. *The Trial Court Properly Allowed Parol Evidence To Interpret the Employment Agreement*

The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; see also Civ. Code, § 1636.)[2] That intent is interpreted according to objective, rather than subjective, criteria. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126 (*Wolf II*).) When the contract is clear and explicit, the parties' intent is determined solely by reference to the language of the agreement. (§§ 1638 ["language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"]; 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"].) The words are to be understood "in their ordinary and popular sense" (§ 1644) and the "whole of [the] contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (§ 1641.)

---

[2] Statutory references are to the Civil Code unless otherwise specified.

Although parol evidence is inadmissible to vary or contradict the clear and unambiguous terms of a written, integrated contract (Code Civ. Proc., § 1856, subd. (a); *Wolf II, supra,* 162 Cal.App.4th at p. 1126), extrinsic evidence is admissible to interpret the agreement when a material term is ambiguous. (*City of Hope Nat. Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 (*City of Hope*); see *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 39-40 [if extrinsic evidence reveals that apparently clear language in the contract is, in fact, "susceptible to more than one reasonable interpretation," it may be used to determine contracting parties' intent]; Code Civ. Proc., § 1856, subd. (g) [extrinsic evidence admissible to interpret terms of ambiguous agreement].)

As we explained in *Wolf II, supra,* 162 Cal.App.4th 1107, when the meaning of words used in a contract is disputed, the trial court engages in a three-step process: "First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.] If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract. [Citations.] When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citations.] This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence [citations] or [when] extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. [Citations.] If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury." (*Wolf II,* at pp. 1126-1127, fn. omitted.)

The language of the employment agreement at issue here is "knowingly unlawful events that are uncured in a timely manner," the condition Marino invoked as "good reason" for his resignation, which he claimed entitled him to recover his salary through March 15, 2008. Marino contends this language is unambiguous: Relevant portions of the Labor Code provide ample clarification of its terms. For instance, the failure to make timely wage payments and the payment of wages with nonnegotiable checks are both

5

misdemeanors under the Labor Code and are thus unlawful acts. (See Lab. Code, §§ 204 [semi-monthly/monthly payments]; 212 [non-negotiable checks]; 215 [misdemeanor for violations of §§ 204, 212].) Further, because a "notice or memorandum of protest or dishonor is admissible as proof of presentation, nonpayment and protest and is presumptive evidence of knowledge of insufficiency of funds or credit with the drawee" (Lab. Code, § 212, subd. (b)), the Pro Sports defendants were presumed to have had knowledge Marino's paychecks were nonnegotiable. Finally, Marino argues, the phrase "cured in a timely manner" requires no interpretation because the Labor Code requires bi-monthly salary to be paid within seven days of the 15th or last day of the month. In this case, his inability to cash his third paycheck dated October 15, 2005 by October 26, 2005 violated the non-waivable requirements of Labor Code sections 204 and 212, subdivision (b).

Pro Sports and the other defendants disagreed with both Marino's contention the contract was unambiguous and his interpretation of the crucial language. At a pretrial hearing, after considering the differing interpretations urged by the parties, the trial court ruled the terms "knowingly," "unlawful" and "timely" were each susceptible to differing interpretations that were not unreasonable under the circumstances. (See *City of Hope, supra,* 43 Cal.4th at p. 395; cf. *Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1350-1351 (*Wolf I*) ["[i]ndeed, it is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face"].) Based on this ruling, the jury heard testimony that Feller understood Pro Sports' accounts at U.S. Bank had overdraft protection he assumed would allow any particular check to be paid from one of several accounts. That testimony supported Feller's contention he did not "knowingly" give Marino a bad check. Although Marino presented evidence Feller had no such understanding, the factual dispute whether Feller knew there were inadequate funds to cover Marino's paycheck was ultimately a question for the jury. (See *City of Hope,* at p. 395 ["when, as here, ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination

6

and the interpretation of the contract are questions of fact that may properly be resolved by the jury"].)

Feller was also allowed to testify he and Marino had discussed the meaning of "good cause" for termination during their original contract negotiations. Feller told Marino he intended the term to encompass actions "outside the scope of [the] agreement," "not following directions," failure to comply with management or the direction of the board of directors, or crimes like theft, bank robbery or driving under the influence of drugs or alcohol. Feller also explained "good reason" for Marino to recover under the contract should he resign would include violations of a similar nature or substantive and significant illegal conduct. According to Feller, Marino did not object to this interpretation or offer any different examples.

Even if Feller's understanding of these terms did not comport precisely with the requirements of the Labor Code, the trial court did not err in admitting his testimony. Marino was certainly entitled to invoke the Labor Code to protect his statutory rights. But with respect to his contract claim, as long as Feller's understanding of the terms was reasonable, evidence of that expressed intent was fully admissible under the parol evidence rule. (See, e.g., *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co., supra,* 69 Cal.2d at pp. 39-40; *City of Hope, supra,* 43 Cal.4th at p. 395.)

> 2. *The Modified Version of CACI No. 314, as Supplemented by Labor Code Provisions Requested by Marino, Adequately Informed the Jury of the Law Governing Marino's Contract Cause of Action*

The trial court instructed the jury with a slightly modified version of CACI No. 314, addressing the interpretation of disputed terms of a contract: "[Marino] and [Pro Sports] dispute the meaning of the following term contained in the contract, quote: 'Knowingly, unlawful events that are uncured in a timely manner,' unquote. [Marino] and [Pro Sports] claim that the contract term means different things. To prevail, [Marino] must prove that his interpretation of the contract is correct. In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was

created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract."

Labor Code section 212, subdivision (b), however, establishes a presumption of knowledge when an employer's check is dishonored: A "notice or memorandum of protest or dishonor is admissible as proof of presentation, nonpayment and protest and is presumptive evidence of knowledge of insufficiency of funds or credit with the drawee." (See *People v. Hampton* (1965) 236 Cal.App.2d 795, 805 [defendants' assertion of lack of knowledge insufficient to rebut presumption under Lab. Code, § 212, subd. (b); to overcome presumption defendants were required to show they took reasonable steps to inform themselves whether funds would be available].) Marino contends, by instructing pursuant to CACI No. 314 that he was required to prove his interpretation of the contract was correct, the trial court improperly shifted the burden of proof in violation of this provision of the Labor Code.

Appellate courts do not readily reverse jury verdicts for instructional error. "A party is not entitled to have the jury instructed in any particular fashion or phraseology, and may not complain if the court correctly gives the substance of the applicable law." (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 553; accord, *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82.) "[T]here is no rule of automatic reversal or 'inherent' prejudice applicable to any category of civil instructional error, whether of commission or omission. A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580, quoting Cal. Const., art. VI, § 13; see also Code Civ. Proc., § 475 ["[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial . . . and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"].) In assessing the likelihood that instructional error prejudicially affected the verdict,

8

"[t]the reviewing court should consider not only the nature of the error . . . but [also] the likelihood of actual prejudice as reflected in the individual trial record, taking into account '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.'" (*Rutherford v. Owens-Illinois*, *Inc.* (1997) 16 Cal.4th 953, 983; accord, *Soule,* at pp. 580-581.)

Here, the trial court properly instructed the jury Marino had the burden of proving his breach of contract claim and supplemented this instruction with the text of Labor Code provisions requested by him to refine the legal principles applicable to his claim. The jury was specifically instructed with Labor Code section 212, subdivision (b), which informed it that, with respect to the element of knowledge, the jurors could presume Feller knew of the lack of funds, subject to any evidence provided by Feller to rebut that evidentiary presumption. (See *Cristler v. Express Messenger Systems, Inc., supra,* 171 Cal.App.4th at p. 82 [instructions as given to be evaluated as a whole, not in isolation].)

Moreover, Marino's counsel explained the nuance of this presumption in his closing argument. The jury's lack of confusion on this point is demonstrated by its verdict on the wage continuation penalties under Labor Code section 203, which required the jury to find that Pro Sports had "willfully" failed to pay Marino his wages in a timely manner. Thus, even assuming some instructional error, Marino cannot demonstrate the necessary prejudice for appellate relief.

3. *Feller's Testimony About His Knowledge of the U.S. Bank Accounts Was Properly Admitted Over Marino's Hearsay Objection*

Similarly, a trial court's error in excluding evidence is grounds for reversing a judgment only if the party appealing demonstrates a "miscarriage of justice"—that is, that a different result would have been probable if the error had not occurred. (See *Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1480, quoting § 354 ["[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors

9

complained of resulted in a miscarriage of justice"]; accord, *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069; *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 51-52 [prejudice will not be presumed; burden rests with party claiming error to demonstrate not only error, but also a resulting miscarriage of justice].)

Over Marino's hearsay objection, the trial court allowed Feller to testify to his understanding of overdraft protections in place for Pro Sports' U.S. Bank checking accounts. Feller's understanding was based on bank statements reflecting certain overdraft charges and credits—instances in which Pro Sports checks had been honored notwithstanding a negative balance in its accounts—and his past conversations with two U.S. Bank employees. Feller and Pro Sports contend this evidence was admissible because it was not offered for the truth but to establish Feller's state of mind. Alternatively, they contend, the testimony was admissible under the state-of-mind exception to hearsay evidence found in Evidence Code section 1250.

Feller's testimony about his understanding was not hearsay. He did not testify to any out-of-court statements; nor was his understanding offered for the truth. Although Marino anticipated that Feller might cite specific out-of-court statements in support of his understanding of the banking arrangements between Pro Sports and U.S. Bank, his personal understanding—incorrect or not—was both relevant and admissible. (See generally Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2012) ¶¶ 8:1548, 8:1557, pp. 8D-127 to 8D-128.) [3]

Moreover, even if Feller's testimony had been wrongly admitted, his testimony did not prejudice Marino. As explained, in awarding waiting time penalties, the jury

---

[3]    Marino also contends Feller lacked foundation to testify about the banking arrangements. Feller held the position of president and chief executive officer of Pro Sports. In that capacity he oversaw the relationship with U.S. Bank and had multiple contacts with the bank. Whether his understanding of the arrangements with U.S. Bank was correct, he had the requisite personal knowledge to offer testimony concerning that understanding. (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, *supra,* ¶ 8:259, p. 8C-13 (rev. #1 2007) ["'Personal knowledge does not require positive certainty. A witness's uncertainty of events goes to the *weight*, *not* the admissibility, of the testimony."].)

10

necessarily concluded Feller "willfully" paid Marino with a check drawn on an account with insufficient funds, thereby rejecting the state-of-mind, good faith defense.

4. *The Trial Court Did Not Abuse Its Discretion in Sustaining Defendants' Objection to Marino's Notice To Produce at Trial*

Pursuant to Code of Civil Procedure section 1987, a party can serve a notice to appear at trial in lieu of a subpoena. If served at least 20 days before trial, the notice can "include a request that the party or person bring with him or her books, documents, electronically stored information, or other things. The notice shall state the exact materials or things desired and that the party or person has them in his or her possession or under his or her control." (*Id.*, subd. (c).) Notably, however, the description of the document must be "exact": Code of Civil Procedure section 1987 may not be used to compel production of a category of documents after discovery is closed. (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, *supra*, ¶¶ 1.114 to 115.1, p. 1-29.)

Although there is scant case law addressing this section, Code of Civil Procedure section 1985, governing issuance of subpoenas duces tecum, contains similar language, requiring the affidavit accompanying the subpoena to "specify[ ] the exact matters or things desired to be produced . . . ." (*Id.,* subd. (b).) The language of section 1985 has been interpreted literally, requiring specificity in the designation of materials to be produced. (See, e.g., *Grannis v. Board of Medical Examiners* (1971) 19 Cal.App.3d 551, 565 ["[t]he principal reason for the specificity requirement is to adequately apprise the custodian of what records are desired and the requested identification may be defeated by generality of description"]; *Flora Crane Service, Inc. v. Superior Court* (1965) 234 Cal.App.2d 767, 785-786.)

Contrary to the language of Code of Civil Procedure section 1987, Marino's notice to appear did not specify "exact" materials to be brought to trial. Rather, in the manner of a discovery request, it listed broad and general subject matter categories,[4] instructing

---

[4] The notice sought, among 62 other categories, "All agreements with and policies of U.S. Bank for any overdraft or anti-fraud protection in any bank accounts owned or held in trust by any Defendant within the last six years." The notice also sought banking

Pro Sports and Feller to bring documents fitting those categories, should any exist. Defendants timely objected to the generality of the requests. Given the breadth of the categories of the notice and its failure to designate any specific materials, the trial court properly concluded the notice did not satisfy the requirements of section 1987 and was an attempt to conduct untimely discovery.[5]

### 5. *Any Error in Instructing the Jury on a Good Faith Defense to Marino's Claim for Wage Continuation Penalties Was Harmless*

Labor Code section 203, subdivision (a),[6] mandates an additional penalty up to a maximum of 30 days' pay if an employer willfully fails to pay the wages of an employee who is discharged or quits. "The statute is designed 'to compel the prompt payment of

---

records, profit and loss statements, books of account and shareholder information related to the alter ego allegation against Feller.

[5]    Marino's attempt to justify the improper use of a notice to produce under Code of Civil Procedure section 1987 by pointing to Pro Sports' tardy production of multiple documents on the eve of trial lacks coherence. Marino has not appealed the court's ruling on his motion in limine to exclude those documents. Moreover, even if Pro Sports acted improperly, Marino's remedy was not to seek additional documents through a notice to produce.

Similarly, Marino's motion to compel was an improper tool to compel production of the audit Pro Sports presented at trial concerning Marino's absences from work. To the extent Marino complains this document constituted improper hearsay, it was admitted as a computer-generated business record. (See Evid. Code, §§ 1271, 1552.) "[C]ourts have refused to require, as a prerequisite to admission of computer records, testimony on the 'acceptability, accuracy, maintenance, and reliability of . . . computer hardware and software.'" (*People v. Martinez* (2000) 22 Cal.4th 106, 132.) When errors and mistakes occur, they may be developed on cross-examination and should not affect the admissibility of the computer record itself. (*Ibid.*)

[6]    Labor Code section 203, subdivision (a), provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which he or she so avoids payment."

12

earned wages'" and "'is to be given a reasonable but strict construction.' [Citation.] 'The object of the statutory plan is to encourage employers to pay amounts concededly owed by [them] to [a] discharged or terminated employee without undue delay and to hasten settlement of disputed amounts.'" (*Mamika v. Barca* (1998) 68 Cal.App.4th 487, 492.) Labor Code section 203.1 imposes a similar penalty, again limited to a maximum of 30 days, against employers who pay their employees with a check that is declined for insufficient funds, unless the employer's violation of the section was unintentional.[7]

At Marino's request the trial court instructed the jury with the text of both sections. At Pro Sports' request and over Marino's objection no such defense had been asserted in the answer, the jury was also instructed with an administrative regulation that a good faith dispute that wages were due constitutes a defense to any penalties owed under Labor Code section 203. (See Cal. Code Reg., tit. 8, § 13520.) The trial court construed Pro Sports' general denial as sufficient to raise the issue of its good faith, which had been placed at issue by the terms of each section that violations must be either "willful[]" (Lab. Code, § 203) or not "unintentional" (Lab. Code, § 203.1). The jury awarded "waiting time" penalties in the amount of $17,307.60 (30 days' pay for Marino), as requested by Marino in a chart of damages he presented in closing argument.

The jury's verdict makes any possible error harmless. "If a plaintiff was fully informed of a defense and the case was fairly tried on the merits, any defect in the pleading of the defense is usually harmless." (*Harper v. Kaiser Cement Corp.* (1983)

---

[7] Labor Code section 203.1 provides: "If an employer pays an employee in the regular course of employment . . . by check, draft or voucher, which check, draft or voucher is subsequently refused payment because the employer or maker has no account with the bank, institution, or person on which the instrument is drawn, or has insufficient funds in the account upon which the instrument is drawn at the time of its presentation, so long as the same is presented within 30 days of receipt by the employee of the check, draft or voucher, those wages or fringe benefits, or both, shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced. However, those wages and fringe benefits shall not continue for more than 30 days and this penalty shall not apply if the employer can establish to the satisfaction of the Labor Commissioner or an appropriate court of law that the violation of this section was unintentional. . . ."

13

144 Cal.App.3d 616, 620-621; see Code Civ. Proc., § 469 "[n]o variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits"].) Here, state of mind was an element of both offenses; the court's instruction based on the administrative regulation defining that state of mind could not possibly prejudice Marino.

Moreover, in awarding waiting time penalties the jury plainly rejected Pro Sports' asserted good faith defense to liability under either section. The jury's failure to calculate penalties under both sections, instead of only one, can likely be attributed to Marino's failure to provide them with the desired calculation of damages and to ensure the verdict form advised the jury how they should proceed. A party cannot allow defects to go to the jury without objection and then claim later those defects misled the jury. (See, e.g., *People v. Bolin* (1998) 18 Cal.4th 297, 330 [failure to object to a defect in the verdict form at the time the court proposed to submit it or when the jury returned its findings forfeits the issue]; *People v. Jones* (2003) 29 Cal.4th 1229, 1259 [same]; *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1287 ["belated references during posttrial proceedings to purported defects in the special verdict forms [do] not preserve the issue"]; *In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1639-1640 [trial court error induced by party forfeits issue on appeal: "Having invited the error, [appellant] cannot profit from it"]; *Olson v. Arnett* (1980) 113 Cal.App.3d 59, 66 [contention trial court erred in submitting the case on the special verdict form rather than instructing the jury in detail on principles of contract law was forfeited by failure to object to the special verdict form].)

6. *The Trial Court Did Not Err in Failing To Award Prejudgment Interest on the Wage Continuation Penalties*

Marino contends he was entitled to prejudgment interest on the waiting time penalties awarded by the jury because they are "capable of being made certain by

calculation" under section 3287, subdivision (a).[8] Like the trial court, we adopt the reasoning of the district court in *Drumm v. Morningstar, Inc.* (N.D. Cal. 2010) 695 F.Supp.2d 1014. There, faced with the same issue, Judge Henderson declined to award prejudgment interest on waiting time penalties: "The purpose of prejudgment interest 'is to provide just compensation to the injured party for loss of use of the award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury.'" (*Id.* at p. 1022, quoting *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663.) "This rationale applies to unpaid wages: prejudgment interest compensates an employee for loss of use of the amount owed. Indeed, [section 218.6 of] the California Labor Code explicitly provides for prejudgment interest in 'any action brought for the nonpayment of wages.'" (*Drumm*, at p. 1022.) "[T]hat same 'end would not be served by awarding prejudgment interest on punitive damages,' which 'are not intended to make the plaintiff whole by compensating for a loss suffered.'" (*Ibid.*, quoting *Lakin,* at p. 664.) "The waiting time penalty, like a punitive damage award, is designed not to make employees whole, but to act 'as a disincentive to employers who are reluctant to pay wages in a timely manner.'" (*Ibid.,* quoting *Mamika v. Barca, supra,* 68 Cal.App.4th at p. 493.) "Awarding prejudgment interest would 'give a windfall' to plaintiffs[ (*Lakin,* at p. 664)], and does not fall within the mandate of section 3287." (*Drumm,* at p. 1022.)

Marino argues Labor Code section 203 penalties are not punitive in nature but are instead simply a statutory disincentive for failure to pay wages. (See *Smith v. Superior Court* (2006) 39 Cal.4th 77, 92 ["[t]he plain purpose of [Labor Code] sections 201 and 203 is to compel the immediate payment of earned wages upon a discharge"].) This distinction is unpersuasive: Although penalties differ from punitive damages in some important

---

[8]     Section 3287, subdivision (a), provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ."

15

ways,[9] "like punitive damages, [they] are intended to punish the wrongdoer and to deter future misconduct." (*People v. First Federal Credit Corp.* (2002) 104 Cal.App.4th 721, 732, citing *People v. Superior Court* (*Kaufman*) 12 Cal.3d 421, 431.)

Accordingly, the trial court did not err in denying prejudgment interest on the waiting time penalties awarded to Marino.

### 7. *The Trial Court Did Not Abuse Its Discretion in Determining the Attorney Fee Motions*

#### a. *Governing Law*

Section 1717, subdivision (a), authorizes the trial court to award reasonable attorney fees to the prevailing party in a contract action if the contract specifically provides for an award of such fees.[10] "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) Likewise, section 1717, subdivision (b)(1), authorizes the trial court to "determine that there is no party prevailing on the contract for purposes of this section."

"[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded or failed to succeed in its contentions.'" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 (*Hsu*).) When the judgment is a

---

[9] Civil penalties, unlike punitive damages, (1) do not require evidence of a defendant's wealth; (2) are mandatory; (3) require proof by a preponderance rather than clear and convincing evidence; (4) are capped; and (5) do not require a jury trial. (*People v. First Federal Credit Corp.*, *supra,* 104 Cal.App.4th at p. 731.)

[10] Section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit."

"'simple, unqualified win'" for one party on the only contract claims presented at trial, a trial court has no discretion to deny an attorney fee award to that party under section 1717. (*Ibid.;* see also *id.* at pp. 875-876 ["when the decision on the litigated contract claims is purely good news for one party and bad news for the other—the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant"].) "Where neither party achieves a complete victory, the trial court has discretion to determine 'which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees.'" (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 439-440, quoting *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.) Nonetheless, "'the party who obtains greater relief on the contract action is the prevailing party entitled to attorney fees under section 1717, regardless of whether another party also obtained lesser relief on the contract or greater relief on noncontractual claims.'" (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 240 (*Barnhart*), italics omitted; see also *Silver Creek, LLC v. Blackrock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1541 (*Silver Creek*) [finding trial court abused its discretion in refusing to award fees to prevailing party in mixed result case]; *Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 531 ["[s]ection 1717 as amended in 1987, makes it clear that the party who obtains greater relief on the contract action is the prevailing party entitled to attorney fees under section 1717, regardless of whether another party also obtained lesser relief on the contract or greater relief on noncontractual claims"].)

      b. *The fee award to Feller and Stratus Media*

Marino contends the trial court abused its discretion, or else failed to exercise it, by awarding fees to Feller and Stratus Media. Although the jury found in favor of Feller and Stratus Media on all claims, Marino argues they had a unity of interest with Pro Sports, which unsuccessfully defended Marino's claim for unpaid wages. In asserting this unity-of-interest theory, Marino relies on the decision in *Hilltop Investment Associates v. Leon* (1994) 28 Cal.App.4th 462 (*Hilltop*), in which the appellate court affirmed an order denying attorney fees to the prevailing individual defendant, who had been sued on all

17

claims as the alter ego of a partnership found liable to the plaintiffs. When the individual sought attorney fees as a prevailing party, the trial court found "'[f]airness dictates that [the individual] should not be declared the prevailing party'" because the evidence shows the individual "'was responsible for the diversion of funds [to] which [the plaintiffs] were rightfully entitled.'" (*Id.* at p. 465.) The appellate court affirmed the trial court's exercise of discretion, concluding, although "[t]echnically speaking, appellant was 'a prevailing party'. . . respondents were also prevailing parties in relation to the partnership over which appellant exerted control" and thus the trial court could conclude the "result was a draw . . . ." (*Id.* at p. 468.)

This decision, assuming it has any viability after the Supreme Court's decision a year later in *Hsu, supra,* 9 Cal.4th 863,[11] is of no assistance to Marino. True, the contract claims against Feller and Stratus Media were predicated on alter ego allegations. But, more importantly, Pro Sports, although found liable on the statutory claim for unpaid wages, successfully defended itself against the far greater liability sought by Marino under the employment agreement. In short, unlike the partnership defendant in *Hilltop, supra,* 28 Cal.App.4th 462, Pro Sports was a prevailing party on the claims arising from the contract. (See *Barnhart, supra,* 211 Cal.App.4th at p. 240; *Silver Creek, supra,* 173 Cal.App.4th at p. 1541.) Whether Pro Sports was entitled to recover its fees as a prevailing party is not before us, but Marino has plainly failed to demonstrate any abuse of discretion in awarding fees to Feller and Stratus Media.

c. *The fee award to Marino*

Marino also contends the trial court abused its discretion in failing to award him more than 10 percent of his attorney fees, based on his successful claim for unpaid wages

---

[11] As noted in *Silver Creek, supra,* 173 Cal.App.4th at page 1541, it is questionable whether *Hilltop* survives the decision in *Hsu,* in which the Supreme Court concluded the trial court lacks discretion to deny fees under section 1717 to a party who has obtained an unqualified successful result. (See *Hsu, supra,* 9 Cal.4th at pp. 875-876.) As we have previously observed, it is equally unclear whether the unity-of-interest doctrine espoused by Marino survived the 1986 revision of the cost recovery statutes, an issue we again need not consider. (See *Zintel Holdings, LLC v. McLean, supra,* 209 Cal.App.4th at pp. 440-442.)

in the amount of $3,202.34, plus interest and penalties.  In his motion for an award of attorney fees, Marino cited both section 1717 (because he prevailed on a claim under the employment agreement) and Labor Code section 218.5, which authorizes an award of reasonable attorney fees and costs to the prevailing party in an action for nonpayment of wages.[12]

Under *Frog Creek, Barnhart* and *Silver Creek* discussed above, Marino was not a prevailing party on the contract claim and was not entitled to an award of attorney fees under section 1717.  As for Labor Code section 218.5, however, the statute requires the court to award fees if the prevailing party on a wage claim has requested them at the outset of the action, which Marino did.

Notwithstanding the mandatory nature of an award under Labor Code section 218.5, the trial court retained discretion to apportion fees.  (See, e.g., *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1604 ["[w]here fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the trial court's discretion"]; accord, *Zintel Holdings LLC v. McLean, supra*, 209 Cal.App.4th at p. 443.)  "The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel and the amount of time involved.  [Citation.]  The court may also consider whether the amount requested is based upon unnecessary or duplicative work."  (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448.)  "The 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'"  (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49;

---

[12]     Labor Code section 218.5 provides:  "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . ."

19

accord, *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 556.)

Although not required to articulate the basis for its award (see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140), the trial court explained the steep reduction in fees was justified because the litigation was principally driven by Marino's "more lucrative" claim for separation damages, not the unpaid wages. The fees requested by Marino ($151,400) far exceeded the amount recovered on the wage claim, which including interest and waiting time penalties totaled $17,307.60. By awarding $15,140 the trial court amply rewarded the effort Marino expended in prevailing on his wage claim. There was no abuse of discretion.

## DISPOSITION

The judgment is affirmed. Pro Sports, Feller and Stratus Media are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

JACKSON, J.