Filed 2/24/16 Unmodified opinion attached

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RANDALL BLACKWELL,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>RAY VASILAS,<br><br>  Defendant and Respondent. | D067239<br><br>(Super. Ct. No. 37-2013-00064563-CU-PO-CTL)<br><br>ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed on January 26, 2016 is modified as follows:

On page 16, the second full paragraph, the first sentence is modified to read:

~~Blackwell~~ Vasilas relies on *Wang v. Division of Labor Standards Enforcement* (1990) 219 Cal.App.3d 1152 (*Wang*) for the proposition that ~~Vasilas~~ he has no duty to verify the licensure of persons who hold themselves out as contractors.

It shall now read:

Vasilas relies on *Wang v. Division of Labor Standards Enforcement* (1990) 219 Cal.App.3d 1152 (*Wang*) for the proposition that he has no duty to verify the licensure of persons who hold themselves out as contractors.

THERE IS NO CHANGE IN JUDGMENT.

HUFFMAN, Acting P. J.

Copies to:  All parties

Filed 1/26/16 Unmodified opinion

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RANDALL BLACKWELL, | D067239 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00064563-CU-PO-CTL) |
| RAY VASILAS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge. Reversed.


Williams Iagmin and Jon R. Williams for Plaintiff and Appellant.

Shoecraft Burton, Michelle L. Burton and Devin T. Shoecraft for Defendant and Respondent.

According to plaintiff/appellant Randall Blackwell (Blackwell), on June 26, 2013, as he was at the top of a ladder installing rain gutters at an investment property owned by defendant/respondent Ray Vasilas (Vasilas), Blackwell stepped on scaffolding that

another contractor[1] had erected at the job site, and the scaffolding collapsed. The collapse caused Blackwell to fall, and he suffered injuries when he landed on a pile of bricks approximately 10 feet below. Blackwell sued Vasilas for negligence. The trial court granted summary judgment in favor of Vasilas.

However, as the moving party, Vasilas did not meet his initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact. Accordingly, the trial court erred in granting Vasilas's motion, and we reverse the resulting judgment.

I.

STATEMENT OF FACTS

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.' " (*Wilson v. 21 Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.) We consider all the evidence in the moving and opposing papers, except evidence to which objections were made and sustained, liberally construing and reasonably deducing inferences from Blackwell's evidence, resolving any doubts in the evidence in his favor. (*Id.* at p. 717; Code Civ. Proc., § 437c, subd. (c).)

As a commercial enterprise, Vasilas buys residential real estate, fixes up and improves the properties and then resells them. Although he performs some of the minor

---

[1]     Unless context indicates otherwise, throughout this opinion, we use the word "contractor" generically to mean someone who performs a construction-related service — *not* as a statutorily-defined term under Business and Professions Code section 7026.

fix-ups and improvements himself, Vasilas is not a licensed contractor and relies on the knowledge and expertise of contractors in their respective fields to perform "significant, extensive, or potentially hazardous work."  Vasilas's usual practice when engaging a potential contractor is to provide a general description of the work and request a quote; if the quote is acceptable, then Vasilas agrees and schedules the work with the contractor. With regard to the work that results from this procedure, Vasilas testified:

> "I do not tell contractors how to do their jobs, participate in, assist with, or oversee the contractor's work, or otherwise actively direct the manner or mode of a contractor's performance.  I stay out of the way.  I assume, and expect, the contractors that I hire know how to perform their trade in a safe manner, and I expect them to take whatever measures they deem necessary to perform their jobs safely.  I do not inquire into, discuss, or involve myself with on-the-job safety issues."

Blackwell's allegations and claims are all based on construction-related work performed at 4401 Topa Topa Drive in La Mesa (the Property), a two-story residential real estate investment property Vasilas purchased in early 2013.[2]  The contractors at issue in this action are Enrique Gomez Jimenez (Gomez), hired by Vasilas to perform stucco work, and Blackwell, hired by Vasilas to perform rain gutter work.  Gomez has not participated in the litigation; all of the evidence in the record is from Blackwell and Vasilas.

Vasilas hired Gomez according to the procedure described above:  Vasilas explained the work he wanted done, Gomez provided a quote, Vasilas orally agreed,

---

[2]     Vasilas purchased the Property in the name of Neighborhood Investments, LLC. Vasilas is the owner and sole member of the entity, which does not have any employees. There is no issue on appeal regarding Vasilas's potential liability based on the ownership of the Property.

Gomez did the work, and Vasilas paid Gomez $7,900 for his work.  Gomez owned, assembled and erected the scaffolding; Vasilas did not participate in any manner, let alone supervise, its assembly or erection.  Vasilas had seen Gomez using the scaffolding without incident, and Vasilas was unaware of anything that suggested there was a risk the scaffolding might fall if used in the manner Blackwell claims to have used it.  To Vasilas the scaffolding appeared stable and safe.

Vasilas also hired Blackwell according to the procedure described above — which was consistent with the procedure Vasilas had used in hiring Blackwell on other projects.  In response to Vasilas's request for a bid on the rain gutter work, Blackwell inspected the Property on his own;[3] at Vasilas's request, Blackwell provided Vasilas with two bids, one for gutters around the entire structure, and one for gutters around only a portion of the structure; Vasilas orally agreed to the quote for the full building; and Blackwell agreed to return the following week to install the gutters.  Other than telling Blackwell exactly where the downspouts and gutters were to be placed, Vasilas did not have any discussions or communications with Blackwell regarding the manner or method of installation, including the equipment and safety precautions Blackwell would use in the installation.

On the day of the accident, Blackwell arrived at the Property with all of his own equipment, tools and supplies necessary to install the rain gutters.  Blackwell saw the scaffolding around a portion of the structure and continued working.  The scaffolding did

[3]     At this time, no scaffolding had been erected at the Property.

4

not look dangerous and Blackwell assumed it was safe, although he does not know much about scaffolding. Before beginning his work, Blackwell did not talk to Vasilas (who was at the Property); i.e., there was no mention of the job or job-site safety generally or of the scaffolding specifically.

Blackwell used an extension ladder to access the roof. As he progressed around the building, Blackwell eventually reached that portion covered by the scaffolding. He leaned his ladder on the top rail of the scaffolding in order to access the roof where the gutter was to be installed. He then climbed up the ladder while carrying a two-foot section of aluminum gutter across his arms. As Blackwell reached the top of the ladder, he stepped off a rung onto the scaffolding — whereupon the scaffolding collapsed and fell away from the exterior of the residence. Blackwell fell 10 feet to the ground, landing on a pile of bricks and injuring himself.

## II.

## STATEMENT OF THE CASE

As a result of the collapse of the scaffolding, Blackwell sued Vasilas, alleging one cause of action for general negligence.[4] Vasilas generally denied the allegations of the complaint, asserted various affirmative defenses, and cross-complained against Gomez for equitable indemnity, contribution and declaratory relief. Gomez did not appear in the action.

---

[4]    Blackwell used Judicial Council forms. On the generic complaint, he checked the boxes that indicated he was attaching the forms for both general negligence and premises liability, but he attached only one form, asserting one cause of action for general negligence.

5

Following discovery, Vasilas filed a motion for summary judgment. Vasilas presented two arguments in support of his position that he had no duty to Blackwell. First, Vasilas argued that *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) and its progeny precluded application of the peculiar (or special) risk doctrine.[5] Second, Vasilas argued that, under general principles of premises liability law, because he had no actual or constructive knowledge that the scaffolding was dangerous, he had no duty to warn Blackwell of the allegedly dangerous condition.

In opposition to the motion, Blackwell first relied on the peculiar risk doctrine as it applied to Gomez. Blackwell argued that Gomez's work involved a "special risk of physical harm" that Vasilas failed to recognize, which resulted in the assembly or maintenance of an unsafe condition on the Property which Vasilas knew or should have known existed. Because Vasilas was responsible for providing Blackwell with a workplace safe from such danger, Blackwell's argument continued, Vasilas breached a duty of due care he owed Blackwell. As an independent theory, Blackwell focused on whether Gomez was a licensed contractor, arguing in the alternative: (1) Vasilas breached "an enhanced duty" to investigate whether Gomez was licensed; and (2) because Gomez was an unlicensed contractor, Gomez was Vasilas's employee for

---

5    According to the peculiar risk doctrine, "a person who hires an independent contractor to perform work that is inherently dangerous can be held liable for tort damages when the contractor's negligent performance of the work causes injuries to others." (*Privette*, *supra*, 5 Cal.4th at p. 691.) *Privette* and its progeny establish exceptions to the peculiar risk doctrine, by which the hirer of an independent contractor is not liable in tort when the contractor's negligence causes harm to others. (E.g., *id.* at p. 702 [hirer not liable to employee of independent contractor who is injured as a result of a special or peculiar risk inherent in the contractor's work].)

6

purposes of respondeat superior, and thus Vasilas was liable to Blackwell for breach of the duty of due care in Gomez's assembly and maintenance the scaffolding.[6]

In reply, Vasilas attacked both the lack of evidence and the legal positions offered by Blackwell. Vasilas first argued that Blackwell did not present any evidence of the following: that the scaffolding collapsed as a result of anyone's negligence; that Vasilas retained and exercised control over the way Blackwell was to do his work; or that Vasilas directed (or otherwise was involved in the decision for) Gomez to use scaffolding. Vasilas then argued that Blackwell's opposition misapplied the law regarding (1) *Privette* and the peculiar risk exception, and (2) when an unlicensed contractor may be treated as the hirer's employee.

By minute order, the trial court granted Vasilas's motion for summary judgment. The court first cited the lack of evidence in support of Blackwell's claims: no evidence of negligence (by anyone) in the assembly or maintenance of the scaffolding; no evidence as to how or why the scaffolding collapsed; no evidence that Vasilas had or retained any control over the installation of the rain gutters (other than directing the locations for the downpipes or gutters as part of the job for which Blackwell submitted a bid); no evidence that Vasilas directed Blackwell to use (or how to use) the scaffolding; no evidence that Blackwell was compelled to use the scaffolding; no evidence that Vasilas had or retained the means by which Gomez performed his work; no evidence that Vasilas had or retained

---

6     " 'Under the theory of respondeat superior, employers are vicariously liable for tortious acts committed by employees during the course and scope of their employment.' " (*Moradi v. Marsh USA, Inc.* (2013) 219 Cal.App.4th 886, 894.)

any control over safety conditions associated with the scaffolding; no evidence that Vasilas had either actual or constructive notice of a dangerous condition associated with the scaffolding; no evidence that Vasilas failed to exercise ordinary care or skill in managing the Property;[7] and, as particularly relevant to the issue on appeal, *no evidence that Gomez was Vasilas's employee for purposes of respondeat superior*. The court then ruled as follows on the legal issues presented: *Privette* precluded Blackwell's claims, and no exception (allowing for application of the peculiar risk doctrine) applied; Vasilas did not owe Blackwell a common law duty of due care[8] with regard to the scaffolding on the Property; and, once again relevant to the issue on appeal, *Gomez was not Vasilas's employee for purposes of applying the doctrine of respondeat superior* to find Vasilas liable for Gomez's alleged torts.[9]

---

[7]    In opposition to Vasilas's motion, Blackwell did not attempt to set forth evidence (and, accordingly, did not argue) that Vasilas failed to exercise due care in managing the construction at the Property.

[8]    We understand the trial court's reference to the lack of "a common law duty" to be the standard set forth in Civil Code section 1714, subdivision (a): "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself . . . ." (See *Rybicki v. Carlson* (2013) 216 Cal.App.4th 758, 762 [Legislature's 1978 amendments to Civ. Code, § 1714 intended to abrogate certain case law and to "reinstate the common law rule"].)

[9]    The court also sustained Vasilas's evidentiary objection to one exhibit submitted by Blackwell. Blackwell does not raise any issue on appeal related to this evidentiary ruling.

8

The court entered judgment against Blackwell in September 2014, Vasilas gave notice in October 2014, and Blackwell timely appealed in December 2014.

III.

DISCUSSION

On appeal, Blackwell refocuses his presentation, arguing only that, *because Gomez was an unlicensed contractor*, Gomez was Vasilas's employee for purposes of respondeat superior and thus liable to Blackwell for Gomez's negligence in assembling or maintaining the scaffolding at the job site. Blackwell relies on Labor Code section 2750.5[10] for the proposition that an unlicensed contractor is the hirer's employee as a matter of law. From the premise that Gomez was Vasilas's employee, Blackwell presents a number of theories by which he contends Vasilas owed him a duty of care related to the scaffolding and safety at the Property on the day of the accident: Vasilas was directly liable for negligently hiring and supervising Gomez; under the doctrine of respondeat superior, Vasilas was liable for all torts committed by Gomez; *Privette* did not shield Vasilas from liability, since Vasilas necessarily retained control over Gomez's work; and Vasilas could not escape liability by delegating to Gomez the responsibility for safety.

As we explain, the trial court erred by not applying section 2750.5 properly. To establish that Gomez was an independent contractor — a necessary finding based on the issues related to the duty that Vasilas raised in his motion for summary judgment —

---

10      Further undesignated statutory references are to the Labor Code.

9

section 2750.5 required *Vasilas* to present evidence either that Gomez had a license or that Gomez was not required to be licensed. Because Vasilas did not meet this *initial* evidentiary burden, the *responsive* burden did not shift to Blackwell to establish a triable issue of material fact.

A.      *Summary Judgment Law*

We review de novo the issues raised by Blackwell in this appeal. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) We must affirm the trial court's ruling on any correct legal theory, so long as the parties had an opportunity to address it in either the trial or appellate court. (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1498; see *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329-330 [appealed judgment correct on any theory will be affirmed, regardless of trial court's stated reasons].) The judgment of the trial court is presumed correct, and Blackwell (as the appellant) has the burden of establishing reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

A defendant is entitled to a summary judgment on the basis that the "action has no merit" (Code Civ. Proc., § 437c, subd. (a)) only where the court is able to determine from the evidence presented that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (*id.*, subd. (c)). A cause of action "has no merit" if one or more of the elements of the cause of action cannot be established, or an affirmative defense to the cause of action can be established. (*Id.*, subd. (*o*).) As applicable here, a legal duty to use due care is an element of a cause of

10

action for negligence.  (*Toland v. Sunland Housing Group* (1998) 18 Cal.4th 253, 267 (*Toland*).)

Thus, a defendant like Vasilas has the burden of *persuasion* that one or more elements of the cause of action at issue "cannot be established" or that "there is a complete defense to that cause of action."  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849, 850, 853-854.)  In attempting to meet this burden, the defendant has the initial burden of *production* to make a prima facie showing of the nonexistence of any triable issue of material fact.  (*Aguilar*, at p. 850.)  If the defendant meets this burden, then the burden of *production* shifts to the plaintiff to establish the existence of a triable issue of material fact.  (*Id.* at pp. 850-851.)

In this appeal from the grant of a summary judgment, therefore, we determine first whether Vasilas's showing establishes his entitlement to judgment in his favor; and if so, we then determine whether Blackwell's showing establishes a triable issue of material fact.  (*Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1042 (*Garcia*).)

B.    *Vasilas Did Not Meet His Initial Burden*

Where respondeat superior is an issue, an initial determination is often whether the alleged tortfeasor is an independent contractor or employee of the hirer.  In potential *Privette* situations, that is because, subject to certain policy considerations, a hirer like Vasilas cannot be held vicariously liable for the negligence of his independent contractors.  (*Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518, 528; *Toland*, *supra*, 18 Cal.4th at pp. 265-266; *Privette*, *supra*, 5 Cal.4th at p. 693.)  For purposes of

determining independent contractor status, under the common law courts must examine several factors, the most important of which is whether the hirer had the right to control the detailed manner and means by which the work was to be performed: "Under this rule, the [employer's] right to exercise complete or authoritative control must be shown, rather than mere suggestion as to detail. A worker is an independent contractor when he or she follows the employer's desires only in the result of the work, and not the means by which it is achieved." (*Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1179; accord, *Beaumont-Jacques v. Farmers Group, Inc.* (2013) 217 Cal.App.4th 1138, 1143 ["the principal's control must be 'complete' in order to find an employer/employee relationship"; hirer of independent contractor "may oversee the results, but not the means, of the work in question"].)

Accordingly, as part of his motion for summary judgment, Vasilas set forth the following evidence in support of his position that Gomez (the alleged tortfeasor) was an independent contractor, not his employee: Vasilas was referred to Gomez, whom he did not know prior to the job at the Property; Vasilas hired Gomez by way of an oral agreement; Vasilas does not have any particular knowledge or experience working with or around scaffolding; the scaffolding was Gomez's property that Gomez brought to the job site; Vasilas did not direct Gomez to assemble the scaffolding; and Vasilas did not supervise or participate in the assembly of the scaffolding. Based on this evidence, we will assume without deciding that Vasilas met his initial burden of production of a prima facie evidentiary showing that, *under common law*, Gomez was an independent contractor — as required by *Aguilar*, *supra*, 25 Cal.4th at page 850.

12

However, "section 2750.5 codifies the general tort standard for independent contractor status" (*Foss v. Anthony Industries* (1983) 139 Cal.App.3d 794, 798 (*Foss*)), pursuant to which Vasilas had an additional evidentiary burden to meet *under statutory law* in order to establish that Gomez was an independent contractor (*id.* at p. 799) — a burden Vasilas never mentioned, let alone attempted to meet, as part of his motion.

Section 2750.5 begins as follows:  "There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to [the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.)], or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor."  In subdivisions (a) through (c), section 2750.5 then lists certain factors that are required for proof of independent contractor status.[11]  Following these subdivisions, section 2750.5 continues with this paragraph:

---

[11]    "Proof of independent contractor status includes satisfactory proof of these factors: [¶]  (a) That the individual has the right to control and discretion as to the manner of performance of the contract for services in that the result of the work and not the means by which it is accomplished is the primary factor bargained for.  [¶]  (b) That the individual is customarily engaged in an independently established business.  [¶]  (c) That the individual's independent contractor status is bona fide and not a subterfuge to avoid employee status.  A bona fide independent contractor status is further evidenced by the presence of cumulative factors such as substantial investment other than personal services in the business, holding out to be in business for oneself, bargaining for a contract to complete a specific project for compensation by project rather than by time, control over the time and place the work is performed, supplying the tools or instrumentalities used in the work other than tools and instrumentalities normally and customarily provided by employees, hiring employees, performing work that is not ordinarily in the course of the principal's work, performing work that requires a particular skill, holding a license pursuant to the Business and Professions Code, the intent by the parties that the work

13

"In addition to the factors contained in subdivisions (a), (b), and (c), any person performing any function or activity for which a license is required pursuant to [the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.)] *shall hold a valid contractors' license as a condition of having independent contractor status*."  (Italics added.)

More than 30 years ago, we ruled that this language "absolutely denies independent contractor status to a person required to have such a license who is not licensed."  (*Foss*, *supra*, 139 Cal.App.3d at p. 797.)

*Foss* involved a wrongful death claim following an accident in which a truck owned by a contractor and driven by the contractor's employee struck and killed a motorcyclist.  (*Foss*, *supra*, 139 Cal.App.3d at p. 796.)  Defendant Anthony Industries (Anthony) had hired the contractor to excavate a swimming pool site, and the contractor's employee was returning to the job site after dumping a load of debris from the excavation.  (*Id.* at pp. 796-797.)  The contractor was required by the applicable chapter of the Business and Professions Code to be licensed to do the excavation work, but was not so licensed.  (*Id.* at p. 797.)  At trial, following the close of plaintiff's case, the court granted Anthony's motion for a nonsuit on the bases (1) section 2750.5 and its rebuttable presumption applied only in workers' compensation cases, and (2) plaintiff, who had the burden of proof, had not introduced any evidence to establish that the contractor was Anthony's employee rather than an independent contractor.  (*Foss*, at p. 797.)  We reversed.

---

relationship is of an independent contractor status, or that the relationship is not severable or terminable at will by the principal but gives rise to an action for breach of contract."  (§ 2750.5.)

14

First, based on both its express language and its legislative history, section 2750.5 applies in tort cases.[12] (*Foss, supra,* 139 Cal.App.3d at pp. 797-799.) Second — as determinative in the present appeal — because the rebuttable presumption in section 2750.5 is a procedural provision affecting the burden of proof, *plaintiff* did not have to prove that the contractor was Anthony's employee; rather, *Anthony* was required to present sufficient evidence that the contractor was licensed (in addition to evidence supporting the other statutory requirements under subds. (a)-(c) of § 2750.5) in order to avoid the statutory presumption that the contractor was Anthony's employee. (*Foss,* at p. 799.) Thus, in *Foss,* since the contractor was required to be, but was not, licensed to do the excavation work, section 2750.5 precluded as a matter of law any consideration that the contractor was an independent contractor. (*Foss,* at p. 797.)

There is a strong public policy behind the presumption affecting the burden of proof in section 2750.5. It imposes liability on the party who is benefited by the labor and is capable of spreading the risk through obtaining insurance (namely, the hirer), and

---

[12] Two years later, our Supreme Court reaffirmed section 2750.5's application in workers' compensation cases, ruling that "by stating that a license is a condition of the status, the Legislature has unequivocally stated that *the person lacking the requisite license may not be an independent contractor*." (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 11, 15, italics added; see *Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227, 233 ["the presumption that the person who employs the unlicensed contractor is the employer is conclusive"].) Notably, even where a plaintiff is statutorily excluded from workers' compensation benefits, a plaintiff may still allege that the tortfeasor was the hirer's employee under section 2750.5. (See *Mendoza v. Brodeur* (2006) 142 Cal.App.4th 72, 79 [roofer hired by homeowner could assert tort claim against homeowner as homeowner's employee under § 2750.5, even though roofer was excluded from workers' compensation under § 3352, subd. (h), because he had not worked the requisite hours for benefits].)

it encourages those who hire others to employ workers who have demonstrated the competence and financial responsibility necessary to obtain a contractor's license. (*Foss*, *supra*, 139 Cal.App.4th at p. 799.)

In the present appeal, we will assume without deciding the same uncontradicted evidence that established a prima facie showing that Gomez was an independent contractor under the *common law* (described *ante*) is also satisfactory proof of the factors in subdivisions (a)-(c) of section 2750.5 (set forth at fn. 11, *ante*) required to establish independent contractor status under this *statutory law*. However, that assumption is not determinative: *In addition to the factors contained in subdivisions (a)-(c)*, for Vasilas to meet his burden of showing Gomez was an independent contractor, the second to last paragraph of section 2750.5 (set forth in a blocked indented quotation *ante*) also required Vasilas to present sufficient evidence that Gomez was licensed.[13] (*Foss*, *supra*, 139 Cal.App.3d at p. 799.) Without such a showing, section 2750.5 denies independent contractor status to Gomez as a matter of law. (*Foss*, at p. 797.)

Blackwell relies on *Wang v. Division of Labor Standards Enforcement* (1990) 219 Cal.App.3d 1152 (*Wang*) for the proposition that Vasilas has no duty to verify the licensure of persons who hold themselves out as contractors. However, *Wang* did not involve a tort claim by an injured party against the owner of property who hired a contractor that allegedly caused the injury. *Wang* dealt with section 1021.5, which

---

[13] Alternatively, Vasilas could have presented evidence that the services performed by Gomez did not require a license pursuant to the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.). (Lab. Code, § 2750.5.) Either way, the burden of proof was on Vasilas. (*Ibid.*; see *Foss*, *supra*, 139 Cal.App.3d at p. 797.)

16

subjects a licensed contractor to a civil penalty if that contractor "willingly and knowingly enters into a contract with any person to perform services for which such a license is required as an independent contractor, and that person does not meet the burden of proof of independent contractor status pursuant to Section 2750.5 or hold a valid state contractor's license . . . ."  (§ 1021.5; *Wang*, at pp. 1157-1158.)

In *Wang*, the Division of Labor Standards Enforcement (DLSE, which is a division of the Department of Industrial Relations) sanctioned a general contractor for violating section 1021.5.  (*Wang*, *supra*, 219 Cal.App.3d at p. 1154.)  After administrative and superior court proceedings, the Court of Appeal held that, in order for the DLSE to sanction the contractor for violating section 1021.5, *the DLSE* had the burden of presenting proof that, at the time of entering the subcontract, the contractor knew the subcontractor was unlicensed.  (*Wang*, at p. 1155.)  At oral argument, Vasilas's counsel suggested that, like the DLSE in *Wang*, Blackwell was required to present proof of Gomez's licensure.[14]  We disagree.  Section 2750.5 contains an express provision affecting the burden of proof for a party in a tort action to establish someone's independent contractor status.  (*Foss*, *supra*, 139 Cal.App.4th at pp. 797-799.)  In

---

[14]     In the briefing, Vasilas's argument was slightly different:  Since licensed contractors who face civil penalties for willingly and knowingly contracting with unlicensed subcontractors have no obligation to verify the licensure of the subcontractors they hire (*Wang*, *supra*, 219 Cal.App.3d at p. 1158), Vasilas had no duty to inquire about or verify Gomez's licensure.  Regardless of the accuracy of that statement under section 1021.5 (for which we express no opinion), section 2750.5 does not deal with the hirer's duty of inquiry.  Section 2750.5 presumes the hired contractor is an employee, and to establish otherwise — i.e., to establish independent contractor status — the statute prescribes both who has the burden of proof and what must be proven.

contrast, because section 1021.5 provides for a civil penalty to be assessed against a contractor who willingly and knowingly enters into a contract with a subcontractor who does not hold a valid state contractor's license, the entity seeking the sanction has the burden of proving the elements of the violation. (*Wang*, *supra*, 219 Cal.App.3d at p. 1155.)

Applying the (rebuttable) presumption affecting the burden of proof under section 2750.5 to Vasilas's motion for summary judgment, we conclude that Vasilas did not meet his *initial* burden of persuasion that one or more elements of the cause of action at issue "cannot be established" or that "there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) To establish that Gomez was an independent contractor (as opposed to Vasilas's employee), *in addition* to presenting evidence of the requisite factors to determine independent contractor status under subdivisions (a), (b) and (c) of section 2750.5, Vasilas *also* was required to present evidence that Gomez was licensed. (*Foss*, *supra*, 139 Cal.App.3d at p. 799.) (Alternatively, Vasilas could have presented evidence that the services performed by Gomez did not require a license. (§ 2750.5.)) Not having presented *any* evidence as to Gomez's licensure — either that Gomez had the required license or that no license was needed for the services Gomez performed — Vasilas did not meet his initial burden of establishing that Gomez was an independent contractor.[15] For this reason, the evidentiary burden never shifted to Blackwell to establish the existence of a triable issue

---

[15] Indeed, without such a showing, Gomez was Vasilas's employee as a matter of law under section 2750.5.

18

of material fact. (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851; *Garcia*, *supra*, 186 Cal.App.4th at p. 1042.)

Accordingly, the trial court erred in granting Vasilas's motion for summary judgment.

At oral argument, Vasilas's counsel suggested that, regardless whether Gomez was an independent contractor or employee, we should affirm the judgment on the alternative basis that there is no evidence that the scaffolding collapsed as a result of negligence on the part of *anyone*, which would include Vasilas or Gomez. Vasilas did raise this concept in the trial court, the court ruled that there was no evidence of negligence in the assembly or maintenance of the scaffolding (or how or why the scaffolding collapsed), and Vasilas mentioned the theory in his brief on appeal. However, Vasilas's points and authorities in the trial court are directed only to whether Vasilas owed Blackwell a duty of due care[16] — not breach of a duty or causation — and the trial court's ruling and Vasilas's appellate argument are also so limited. The lack of evidence of improper assembly or maintenance of the scaffolding does not affect whether a legal duty existed. Because neither the parties nor the trial court considered any issue other than duty, we decline to consider in the first instance whether the record contains evidence of a breach of duty or causation. (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 696 ["we will not consider a new issue where the failure to raise the issue in the trial court deprived an opposing party of the opportunity to present relevant evidence that, if considered by the

---

[16] The record on appeal does not contain a copy of the actual motion.

19

trial court, might have affected its ruling"]; *Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) The evidentiary issue of fault — e.g., breach of duty or causation — was not properly addressed in the underlying motion for summary judgment.

### DISPOSITION

The judgment is reversed.


                                                                          IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.