Filed 6/10/16  Carachure v. Scott CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARIA CARACHURE, | |
| Plaintiff and Appellant, | E063780 |
| v. | (Super.Ct.No. RIC1309555) |
| CELIA ACOSTA SCOTT, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John W. Vineyard, Judge.

Reversed.

Avrek Law Firm, Maryam Parman; Bisnar | Chase, Brian D. Chase and H. Gavin

Long for Plaintiff and Appellant.

Demler, Armstrong & Rowland, Robert W. Armstrong, David A. Ring; Greines,

Martin, Stein & Richland, Robert A. Olson and David E. Hackett for Defendant and

Respondent.

1

Plaintiff and appellant Maria Carachure appeals from a summary judgment in her personal injury suit against defendant and respondent Celia Acosta Scott. Carachure alleged that Scott struck her with her automobile, causing severe physical injuries, including traumatic brain damage, as well as emotional distress. Scott's answer to the operative first amended complaint alleged that the parties entered into an enforceable prefiling settlement agreement. She then filed a motion for summary judgment, asserting undisputed evidence that the parties entered into an enforceable agreement to settle Carachure's claim for the $15,000 limit under Scott's automobile insurance policy.[1] Carachure now contends that Scott did not meet her burden to demonstrate (1) that Carachure had the capacity to enter into a contract; (2) that she actually consented to the settlement agreement; and (3) that the terms of the purported settlement agreement were sufficiently clear as to constitute a binding agreement.

We conclude that there is a triable issue of fact as to whether Carachure actually assented to the settlement. Consequently, we will reverse the judgment.

FACTUAL BACKGROUND

As alleged in the operative first amended complaint, Carachure was severely injured on or about August 21, 2011, when Scott's car struck her while she was standing on the side of a road. Carachure's injuries included injuries to her "brain, body, nervous

---

[1] Carachure's son, grandson and granddaughter are also plaintiffs in the lawsuit, alleging that they suffered emotional distress as a result of witnessing the accident. The summary judgment motion was brought as to Carachure's claim only. Accordingly, the remaining plaintiffs are not parties to this appeal.

system, and person." The other plaintiffs are children, closely related to Carachure, who witnessed the accident and suffered severe emotional distress as a result.

On October 12, 2011, Maryam Parman, an attorney with the Avrek Law Firm, wrote to Scott's insurer, Safeco Insurance (Safeco), to inform Safeco that her firm had been retained by Carachure and the other plaintiffs with respect to the accident. On October 14, 2011, Parman wrote to Safeco demanding settlement of Carachure's claim for Scott's policy limit of $15,000 and the joint settlement of the other plaintiffs' claims for the policy limit of $15,000. In that letter, Parman stated that the accident caused severe and permanent injuries to Carachure and that she was then hospitalized in the neurological unit of San Bernardino Community Hospital. The settlement offer included the following conditions: (1) Safeco to furnish a complete copy of the insurance policy of the driver and vehicle owner; (2) Safeco to notify the plaintiffs of the policy limits and Safeco's acceptance of the offer prior to a specified date and time; (3) a prompt exchange of the settlement draft for the release of all claims; and (4) a declaration signed by Safeco's insured regarding additional insurance coverage and agency.

Safeco agreed to settle Carachure's claim for $15,000, but asked for additional time to investigate the claims of the other plaintiffs, in that the police report did not list them as witnesses to the accident. On October 21, 2011, Safeco's adjuster emailed the law firm's office manager, confirming a telephone conversation in which, he said, they had agreed to settle Carachure's claim for $15,000. He asked that the law firm provide declarations "of no other insurance and not in course of employment agency [*sic*]" for him to have Scott sign. He again asked for 30 days to respond to the demand on behalf of

3

the other plaintiffs. On the same date, the office manager responded, "The following is a copy of the Policy Declaration for your insured to sign. Also, please forward the settlement draft along with the Release of All Claims as soon as possible."

Further correspondence concerning various documents to be signed by the parties, including a revised release of claims, ensued. On February 23, 2012, the law firm's office manager emailed Safeco, stating that she would have the attorney review the revised release that Safeco had provided. On March 29, 2012, Safeco wrote a letter confirming that the office manager had told him that the other plaintiffs would not be pursuing their claims and asking about the status of the release. After further correspondence, the office manager informed Safeco on June 20, 2012, that the client "finally agreed to sign the release," and that they should have it by the following week.

On July 11, 2012, August 15, 2012, and August 24, 2012, Safeco's adjuster again inquired about the status of the release. He also asked if the law firm had "clarified the issue" as to whether the other plaintiffs would be pursuing claims.

On September 18, 2012, the attorney wrote to Safeco, restating the demand for settlement for the total policy limit of $30,000, specifying that $15,000 was to be paid to Carachure and $15,000 to the other plaintiffs and specifying other requirements. On September 26, 2012, Safeco responded that it had already provided the requested documents and asked for Carachure's release and a Medicare compliance form as a prerequisite to issuance of the settlement check for Carachure's claim. The letter stated that it could assess the claim of one of the other plaintiffs upon receipt of medical documentation supporting his claim of emotional distress, but that it could not assess the

4

claims of the remaining two plaintiffs as there was no evidence that they had witnessed the accident.

On November 5, 2012, the attorney informed Safeco that the demand had expired on September 27, 2012, and that Safeco's failure to comply with the terms of the demand was evidence of bad faith insurance practices. On August 15, 2013, the original complaint was filed, and on August 23, 2013, the court issued an order appointing a guardian ad litem for Carachure. The first amended complaint was filed on June 16, 2014.

LEGAL ANALYSIS

In reviewing a grant of summary judgment, "we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action." (*Wiener v. Southcoast Childcare Centers*, *Inc.* (2004) 32 Cal.4th 1138, 1142.) A defendant moving for summary judgment has the initial burden to make a prima facie showing—in this case, to show the existence of an enforceable settlement agreement. If the defendant makes that showing, the burden shifts to the plaintiff to show a triable issue of fact. (*Ibid.*) In performing our review, we view the evidence in the light most favorable to the plaintiff as the losing party. We liberally construe the plaintiff's evidentiary submissions and strictly scrutinize the defendant's own evidence, in order to resolve any evidentiary doubts or ambiguities in the plaintiff's favor. (*Ibid.*)

"'A settlement agreement is a contract, and the legal principles [that] apply to contracts generally apply to settlement contracts.' [Citation.] Its validity is thus 'judged by the same legal principles applicable to contracts generally.' [Citations.] Defendants

5

therefore had the burden of establishing each contractual element—parties who are capable of entering into contract, their mutual consent, a lawful object, and sufficient cause or consideration [citations]—in support of their motion." (*Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1585-1586.) As noted above, Carachure contends on three grounds that Scott failed to meet her burden to demonstrate that the parties entered into a binding contract.

    1. *Capacity to Contract.*

Carachure argues that in order to prevail on the contention that she and Scott entered into a binding settlement agreement, Scott had the burden to prove that Carachure had the legal capacity to enter into a contract. She states that before the summary judgment motion was filed, Scott "was on notice that Ms. Carachure was suffering from a traumatic brain injury and that her action was being prosecuted through a guardian ad litem . . . if not before in the presentation of records to Safeco Insurance as a part of the negotiations and adjusting the claim. Therefore, Ms. Scott was well aware that she needed to address Ms. Carachure's capacity in trying to establish the creation of an enforceable settlement agreement. [¶] [However,] Ms. Scott produced no evidence on this issue." For this reason, she contends that the burden to produce evidence of her lack of capacity never shifted to her. We disagree.

There is a rebuttable presumption, affecting the burden of proof, that a person is legally capable of entering into a contract. (Prob. Code, §§ 810, subd. (a), 811, subd. (a); Civ. Code, § 1556 ["All persons are capable of contracting, except . . . persons of unsound mind . . ."].) Scott contends that she was entitled to the benefit of that

6

presumption in her motion for summary judgment and that she was not required to proffer any evidence that Carachure was legally capable of entering into a contract in order to prevail on the motion. Carachure argues that Scott is not entitled to rely on that presumption because she did not allege Carachure's capacity in her answer to the complaint or assert it in her statement of undisputed facts.

The effect of a presumption affecting the burden of proof is to impose on the adverse party the burden of proof as to the nonexistence of the presumed fact. (Evid. Code, § 606.) Accordingly, a relevant presumption affecting the burden of proof may support a summary judgment if the opposing party fails to produce any evidence to controvert the presumption. (*Security Pacific National Bank v. Associated Motor Sales* (1980) 106 Cal.App.3d 171, 180; see *Blackwell v. Vasilas* (2016) 244 Cal.App.4th 160, 169-173 [defendant employer failed to refute presumption provided in Lab. Code, § 2750.5 that worker performing services for which a license is required pursuant to the Contractors' State License Law is an employee rather than an independent contractor; hence, summary judgment motion failed].) Here, Scott was entitled to rely on the presumption of capacity and had no burden to make a prima facie showing that Carachure had the legal capacity to enter into a contract. On the contrary, the burden was on Carachure to provide evidence to refute the presumption.

Carachure attempted to meet that burden, but failed to do so. The only evidence she provided in support of the contention that she lacked the capacity to enter into a settlement agreement is the declaration of her attorney, stating that Carachure suffered traumatic brain injury in the accident and that her mental capacity was gravely affected

7

by that injury. The declaration states that the attorney "believe[s]" that Carachure lacks legal capacity, and "that is why this case is being litigated through a guardian ad litem." The trial court sustained Scott's objection to the declaration as lacking foundation for the attorney's opinion.[2]

Carachure argues that Scott did have the burden to provide evidence of Carachure's capacity because Scott was aware that Carachure suffered traumatic brain injury in the accident. She cites her attorney's settlement demand letter to Safeco, dated October 14, 2011, and medical records provided to Safeco that showed that Carachure suffered traumatic brain injury in the accident. The medical records are not contained in the record on appeal, but even if they were, we disagree that this is sufficient either to place the burden of proving Carachure's legal capacity on Scott or to discharge Carachure's burden to refute the presumption of capacity.

Carachure also assumes that traumatic brain injury necessarily renders a person not competent to enter into a contract. This is not the case. A person has the power to make a contract unless she is of "unsound mind," i.e., "entirely without understanding." (Civ. Code, §§ 38, 1557.) A determination that a person is of unsound mind or lacks the capacity to contract requires evidence of a deficit in at least one of many enumerated functions and evidence of a correlation between the deficit or deficits and the decision or

---

[2] Carachure does not contend that the trial court erred by sustaining the objection to her attorney's declaration. She does argue that the purpose of the declaration was not to prove that she lacked capacity to enter into a contract but rather to show her attorney's state of mind, i.e., to explain why the attorney believed she did not have the authority to bind Carachure to the settlement agreement. This is not relevant to her contention that Scott failed to meet her burden on the question of Carachure's capacity.

8

act in question. (Prob. Code, § 811, subd. (a).) The mere diagnosis of a mental or physical disorder is not sufficient, in and of itself, to support a determination that a person is of unsound mind or lacks the capacity to do the act in question. (Prob. Code, § 811, subd. (d).) Here, although there is some evidence that Carachure had a diagnosis of traumatic brain injury in 2011, the evidence does not show that the injury rendered her incapable of contracting. Traumatic brain injury can be mild, moderate or severe, and its effects can be transitory or long-lasting. (Centers for Disease Control and Prevention Web site at <http://www.cdc.gov/traumaticbraininjury/get_the_facts.html> [as of June 10, 2016].) Accordingly, the mere fact that Carachure was diagnosed with traumatic brain injury does not support the conclusion that her injury was so severe as to render her incapacitated for purposes of entering into a contract.

Carachure also argues that the fact that the trial court appointed a guardian ad litem on August 23, 2013, after the complaint was filed, demonstrates her lack of legal capacity to enter into a contract. Code of Civil Procedure section 372, subdivision (a)(1), provides that a court may appoint a guardian ad litem for a litigant "who lacks legal capacity to make decisions." Accordingly, the trial court's appointment of a guardian ad litem is clearly sufficient to show that as of August 23, 2013, Carachure lacked the capacity to "make decisions" in connection with entering into a contract. (*Ibid.*) It is not, however, sufficient to show a triable question of fact as to whether she was competent two years earlier, when the original settlement demand was issued. The record on appeal does not contain any evidence presented to the court in support of the application for appointment of a guardian ad litem, or any other evidence that might demonstrate that

9

Carachure was incapacitated two years earlier, when the parties began their settlement discussions. In the absence of such evidence, we must assume that it is possible that in the two intervening years, her condition deteriorated to the point where she lacked the capacity to make decisions or that some other illness or injury caused her to lose the capacity to contract.

2. *Scott Failed to Make a Prima Facie Showing That Carachure Personally Agreed to a Settlement.*

Next, Carachure contends that Scott failed to make a prima facie showing that she actually consented to be bound by the alleged settlement agreement because Scott failed to present evidence that Carachure's attorney was authorized to enter into a settlement on her behalf. Here, we agree.

In her summary judgment motion, Scott relied exclusively on the correspondence exchanged between the Avrek Law Firm and Safeco to establish that Carachure entered into a binding settlement agreement. Scott asserts that there is a presumption that an attorney is authorized to settle on a client's behalf and that the correspondence is sufficient to amount to apparent authority on the part of the attorney to settle the claim on Carachure's behalf. However, in *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 404-408 (*Blanton*), the California Supreme Court made it clear that with respect to actions that compromise a client's substantial rights, including the settlement of a claim, there is no such presumption, and that an attorney has no apparent authority to settle a claim "merely by virtue of his employment as such." (*Id.* at p. 407.) On the contrary, an attorney is not authorized, "merely by virtue of his retention in litigation, to 'impair the

10

client's substantial rights or the cause of action itself.' [Citation.]" (*Id.* at p. 404.) Rather, "'[T]he law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation. [Citations.]'" (*Ibid*; accord, *Levy v. Superior Court* (1995) 10 Cal.4th 578, 583 [settlement is "such a serious step that it requires the client's knowledge and express consent"].) Moreover, "when it comes to such a substantial matter as compromise of an action, 'a person dealing with an attorney, as dealing with any agent, must ascertain whether the agent has authority to do the purported act and assumes the risk if in fact the agent has no such authority.' [Citations.]" (*Blanton*, at p. 406.) Here, there is nothing in the correspondence Scott relied upon that emanated from Carachure herself stating that the Avrek Law Firm was authorized to act on her behalf. The law firm's own assertion that it was acting with Carachure's authority to settle the lawsuit is not sufficient to shift the burden to Carachure to produce evidence that she did not assent.[3]

Nor is the fact that Carachure never disavowed the settlement agreement sufficient to shift the burden, as Scott contends. There is no presumption that a person knows that an attorney is purporting to act with her consent to settle a claim. In the absence of any evidence that Carachure did know about the settlement agreement, the burden cannot shift to Carachure to demonstrate that she disavowed it.

---

[3] Although in *Blanton* the stipulation for binding arbitration was entered into in direct opposition to the client's wishes, as Scott states (*Blanton, supra,* 38 Cal.3d at p. 405, fn. 8), that fact was in no way essential to the court's holding.

11

We also reject Scott's contention that Carachure ratified the settlement agreement. As a general proposition, the authority of an attorney to bind a client by agreement is governed by the principles of agency. (*Blanton*, *supra*, 38 Cal.3d at p. 403.) Consistent with those principles, "unauthorized acts of an attorney may be binding upon his client through ratification [citation]." (*Id*. at p. 408.) "'Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. [Citations.]'" (*Estate of Stephens* (2002) 28 Cal.4th 665, 673.) Knowledge of the material facts is an essential requirement of ratification. (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 74.) All of the cases cited by Scott recognize that a person may be found to have ratified the act of an attorney or other agent only if there is evidence that the person actually knew of the act. As we have discussed, Scott did not produce any evidence that Carachure knew about the correspondence between the law firm and Safeco or about the proposed settlement. In the absence of such evidence, she cannot be said to have ratified it.

We acknowledge Scott's argument that the evidence supports the inference that the law firm was acting with Carachure's knowledge and consent because it is improbable that the Avrek Law Firm is a rogue law firm that operates by hijacking claims of individuals who did not retain it. It may be improbable, but it is not impossible. In any event, pursuant to *Blanton*, *supra*, 38 Cal.3d 396, we cannot affirm the summary judgment in the absence of any evidence whatsoever that Carachure actually knew about and personally agreed to enter into a settlement agreement or knowingly ratified it. (*Id*.

12

at pp. 404-408.)  Because there remains a triable issue of fact as to her actual consent to the settlement agreement, we will reverse the judgment.

3.  *Certainty of the Terms of the Purported Settlement*.

Finally, Carachure contends that Scott failed to meet her burden of proof and her burden of persuasion on the issue of consent because there was no certainty of terms and no evidence of a meeting of the minds necessary to establish the settlement agreement. She points out that consent is not mutual "unless the parties all agree upon the same thing in the same sense."  (Civ. Code, § 1580.)  Because we have determined that Scott failed to meet her burden of proving that Carachure consented to any settlement, however, we need not address this contention.

DISPOSITION

The judgment is reversed, and the cause is remanded for further proceedings. Plaintiff Maria Carachure is awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


MILLER
J.


SLOUGH
J.